H.L. PETERSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 60679.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 16, 1983.

Michael W. George, Denton, for appellant.

Jerry Cobb, Dist. Atty. and David Bays, Asst. Dist. Atty., Denton, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON REHEARING ON COURT'S OWN MOTION

ONION, Presiding Judge.

This is an appeal from a conviction for theft over $10,000.00, a felony of the second degree. V.T.C.A., Penal Code, § 31.03. Following the jury's guilty verdict, the court assessed punishment at five (5) years' imprisonment, probated, with a requirement of $8,480.21 in restitution as a condition of probation.

On original submission the conviction was affirmed in a panel opinion with one judge dissenting as to the sufficiency of the evidence to sustain the conviction. The court on its own motion has granted rehearing to consider en banc the sufficiency of the evidence issue. The opinions on original submission are withdrawn.

This case arose out of a construction contract. Marvin Loveless, the complaining witness, decided to build a second unit to his mini-warehouse with an apartment on the top at one end. The appellant, a con-

struction contractor, was recommended to him. Loveless sought a bid from the appellant as well as the Denton Construction Company. The latter bid $84,000.00 or $85,000.00 and the appellant bid $61,000.00. Appellant's bid of November 2, 1976 was accepted on November 3, 1976 by Loveless and the agreement then entered into excluded site work, electrical and plumbing work and a permit which was to be arranged for by Loveless. The agreement provided for payments "Every 30 days for material on job site & work performed."

On November 18, 1976, Loveless paid appellant $10,000.00. On December 2, 1976, a payment of $20,000.00 was made. Another payment of $15,000.00 was made on January 8, 1977 by Loveless to appellant. On February 18, 1977, a $5,000.00 payment was made, and on March 24, 1977, a $4,000.00 payment was made by Loveless to the appellant. On April 12, 1977, another $4,000.00 payment was made. In all, Loveless paid the appellant $58,000.00. It was Loveless' understanding from his conversations with the appellant that the money advanced was being used by the appellant for materials needed for the construction job.

The construction at the site by the appellant commenced in December, 1976, and progressed until sometime in May, 1977. It was not at the rate of progress appellant had promised, but Loveless knew at the time of agreement the appellant was working on at least two other larger construction sites at the same time. No date of completion was placed in the agreement or contract.

In May, 1977, Loveless began receiving calls from various suppliers who stated they had not been paid for materials they had furnished for his job site. Loveless began having difficulty in contacting the appellant. He finally found the appellant on the job site. Appellant asked for an additional advance of money to pay for sheet metal for partitioning. Loveless first told appellant to make arrangements to pay for it

himself, but later stated he would pay for it personally, which he did. On May 25, 1977, he mailed to the appellant a list of things that needed to be done at the site, and on May 31, 1977, mailed a letter to appellant, stating that since no work had been done recently at the site he assumed appellant had abandoned the site. These letters were returned "addressee unknown." It was later established that the letters had been mailed to the wrong address.

Loveless then hired a worker previously employed by the appellant to complete the job. He testified that when appellant ceased working on the building it was "more than seventy-five percent" completed and he was satisfied with most of the work.

Charles Davis, Jr., of the Denton Concrete Company, testified that the appellant had an outstanding bill of $2,064.00 for concrete, etc., supplied to the Loveless job site. After billing appellant and unsuccessfully trying to contact him by telephone, his company placed a lien on Loveless' property. David related that approximately a month before trial, May, 1978, appellant paid the outstanding bill in full and a release of the lien against Loveless' property was executed.

Doug Rankin of the Boyd Houston Company testified his company supplied concrete accessories to the Loveless job site and their bill was approximately $900.00. He had been in contact with appellant, but the bill had not been paid. Rankin related that no lien had been placed against the Loveless property and the company was looking solely to the appellant for payment.

H.A. Hollerman of Ward and Capers, Inc., testified his company supplied steel doors and frames and other hardware to the Loveless job site. Appellant did not pay the bill for $3,986.21. The company was still looking to appellant for payment.

Pat Bell of the Bell Roofing Company testified that his company put the roof on the Loveless building at the direction of the

appellant. He testified his 35 to 40 efforts to contact the appellant about the bill of $2,700.00 were unsuccessful. Since appellant did not pay the bill, a lien was placed on the Loveless property.

Bod Edwards of Hipwell Sheet Metal, Inc., testified his company installed the sheet metal gravel guards on the roof of the Loveless building. His attempts for seven or eight months to collect the bill from the appellant were unsuccessful and a lien of $1,082.00 was placed against the Loveless property.

Appellant testified that he entered the agreement as a subcontractor and considered Loveless the general contractor since there were several contractors over which he had no control, and the agreement expressly excluded site work, plumbing and electrical work and permits. Appellant also related he was to build the shell of the building and Loveless was to paint, caulk and "fix up" the building.

Loveless told him that their written agreement would be drafted into a formal contract by his lawyer-son, but the same was never done.

Appellant admitted receiving the money from Loveless described above. He related the agreement called for monthly payments and he and Loveless agreed on the payments for materials furnished and work done before the payments were made. Appellant testified he used one operating bank account for his business, and that all operating costs were paid out of this account. He had placed the money he received from Loveless in this account. This was the manner in which he had conducted his construction business for five years. Appellant stated his agreement with Loveless did not include a provision as to a fiduciary or trust account and there was no requirement of any separate account. He had six construction jobs between November, 1976 and May, 1977. In March, 1977, he testified that a $36,000.00 payment was withheld from a Lewisville school project on which he was working and he had hired an attorney to pursue collection. Appellant did not pay Hipwell Sheet Metal, Inc., because he did not have a contract with them and understood the particular work was to be included in his contract with Bell Roofing Company. He had not paid Bell because he had been charged more than the agreed price, and felt he would lose any leverage necessary for a settlement if he paid the amount he thought was due. He had not paid Ward and Capers because the door jambs, door and locks he received were not the proper size and he felt he was entitled to an offset. He acknowledged he was indebted to the Denton Concrete Company and he had since paid them. He intended to pay all outstanding bills except the Hipwell bill when the disputes could be settled.

Appellant testified that about May 1, 1977, Loveless indicated that he was unhappy with the progress being made. He explained he had had to work around the plumbing and electrical workers hired by Loveless, and some of their work had been redone by him "which had offsets in my contract with Mr. Loveless." About this time he asked Loveless for an advance to buy sheet metal for partitioning, but Loveless refused because he had learned of some outstanding bills. The appellant stated this was the first time he had asked Loveless for an advance simply for materials. He told Loveless he would pay the outstanding bills when he got the money and could get an equitable settlement with the suppliers. Appellant continued to work with some materials furnished by Loveless, but soon learned that one of his employees, Bob Grunnell, and his crew had been hired by Loveless to "finish up the job," and would no longer work for him on the site. He related he never got Loveless' letters of May 25 and 31, 1977.

Appellant felt that Loveless "had taken the job back to finish up," and since Loveless was an old man he didn't want a "row" and thought the matter could be settled in court, if necessary. He stated that at the time the job was 95% complete.

Appellant had worked on 200 to 300 construction jobs and never had any previous trouble, and that using one bank account for operating his business was customary among contractors, paying all proper bills as they came in. Once he received the money described with Loveless' agreement for materials furnished and work completed, he no longer considered the money as Loveless' as he was only drawing money in accordance with the agreement. He denied stealing money from Loveless and stated he had never been arrested before.

The indictment in pertinent part alleged that on or about April 12, 1977 the appellant did "knowingly and intentionally appropriate property, to wit: current money of the United States of America of the value of more than ten thousand dollars, without the effective consent of Marvin Loveless, the owner thereof, and with intent to deprive said owner of said property . . . ."

V.T.C.A., Penal Code, § 31.03(a), (b)(1), (2), provides:

"(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.

"(b) Appropriation of property is unlawful if:

"(1) it is without the owner's effective consent; or

"(2) the property is stolen and the actor appropriates the property knowing it was stolen by another."

(Acts 1975, 64th Leg., p. 914, ch. 342, § 10, eff. Sept. 1, 1975, and in effect at time of alleged offense.)

V.T.C.A., Penal Code, § 31.01(5), provides:

"(5) 'Appropriate' means:

"(A) to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another; or

"(B) to acquire or otherwise exercise control over property other than real property."

(Acts 1975, 64th, Leg., p. 914, ch. 342, § 9, eff. Sept. 1, 1975.)

V.T.C.A., Penal Code, § 31.01(4)(A), provides:

"(4) 'Effective consent' includes consent by a person legally authorized to act for the owner. Consent is not effective if:

"(A) induced by deception or coercion; . . ."

V.T.C.A., Penal Code, § 31.01(2), provides:

"(2) Deception means:

"(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

"(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;

"(C) preventing another from acquiring information likely to affect his judgment in the transaction;

"(D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or

"(E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed."

■ The elements of the offense with which appellant is charged are:

(1) a person

(2) with intent to deprive the owner of property

(3) unlawfully appropriates property

(4) without the effective consent of the owner.

Money over the amount of $10,000.00 was the property allegedly stolen. It was voluntarily delivered to appellant, so the State necessarily was proceeding on the theory that consent was ineffective due to deception.

Did the appellant appropriate $58,000.00 from Loveless by deception? Even the State does not contend that, in view of the evidence including the fact that Loveless considered the building was 75% complete[1] according to the contract when he hired someone else to complete the job feeling appellant had abandoned the construction, and that at the time appellant viewed the job as 95% complete. At trial the State took the position that the amount appellant had "stolen" from Loveless was the amount of the unpaid bills at the time appellant ceased working on the Loveless job. This amount was over $10,000.00 but less than $11,000.00. It included the $2,064.00 bill of the Denton Concrete Company which was paid by appellant prior to trial and which he acknowledged was always his indebtedness.[2]

The State relies upon Loveless' testimony that he would not have parted with any of the money ($58,000.00) had not the appellant made the representation that it was to pay the suppliers.[3] Loveless did not explain

how he paid within $3,000.00 of the total contract price of $61,000.00 to pay only suppliers without any consideration of the work done, wages and the profit angle. The contract which he did not dispute provided for payments every 30 days "for material on job site and work performed." Appellant denied that the payments were exclusively for the suppliers, and he considered the money his upon payment. He was not required to keep a separate account.

■ The indictment alleged the offense of theft of property over the value of $10,000.00 took place on or about April 12, 1977. The evidence shows that on April 12, 1977 a payment of $4,000.00 was made by Loveless. In order to constitute theft over $10,000.00 it was necessary to show that on other dates, in addition to April 12th, appellant received other money with the requisite intent as alleged in the indictment. Under the State's theory, it was necessary to show that appellant on the various dates intended to deprive Loveless of money without Loveless' effective consent, the amount involved being the sum of unpaid bills on some subsequent date and some of which had not even been incurred at the time of the "takings." Relevant intent to deprive the owner of property is the accused's intent at the time of the taking. *Griffin v. State,* 614 S.W.2d 155 (Tex.Cr.App.1981).

■ We cannot conclude that the State has sustained its burden of proof to show the requisite intent as alleged.

Even if it can be argued that contrary to contract provisions appellant asked for and

---

1. Loveless testified he completed the job for "about" $5,000.00 despite his claim of only 75% completion.

2. The prosecutor argued to the jury that if they wanted to deduct the $2,064.00 from the total the jurors could still find appellant guilty of a lesser included offense of theft than that charged.

3. Loveless actually testified that it was *his* "understanding" the funds paid were to be used to pay for suppliers. When asked if the

appellant gave "any indication of that?" he answered, "Yes, he told me that he needed the money to pay these various things he had to have ... Well, in every case he was going to use the money to pay for the items he needed. Sometimes he told me what the items were and sometimes it was just a generality ...." There was no evidence as to any mutual agreement that the money paid would be used only to pay suppliers.

received the $58,000.00 from Loveless only to pay the suppliers, the State failed to show that he did not do this. As the dissenting opinion on original submission by Judge Odom pointed out:

"The fact that there were unpaid bills does not show appellant did not use the $58,000 given him by Loveless to pay for materials as promised. Consistent with the proof described by the majority is the possibility that appellant spent all of the $58,000 on materials, and the unpaid bills relied on by the State were the result of cost overruns. The burden was on the State to prove a reasonable doubt that appellant stole over $10,000 out of the $58,000 obtained from Loveless. I do not see how this was proven when the majority has not shown there was any evidence of what happened to any of the $58,000."

Further, there is another failure of proof. The trial court instructed the jury with every variation of "deception" found in V.T. C.A., Penal Code, § 31.01(2)(A)–(E). The jury returned a general verdict. There was no evidence of deception under said § 31.-01(2)(A)–(D). The only possible theory of deception would have been under § 31.-01(2)(E).

Recently, in a similar case involving a construction contract, we made the following observations:

"A contractual agreement was entered into by the Anders and the appellant to build an addition to their house for $20,-791.00 with $6,930.33 down payment. The appellant took some measurements and drew up some plans. There is conflicting testimony as to whether the appellant built some forms for the concrete. However, the Anders and the appellant on several occasions spoke with one another after the down payment was made. The record reveals that the appellant could not perform, as per the contract agreement, and told the Anders on several occasions he was having trouble with getting plumbers to do their job.

"The down payment was the property allegedly stolen. It was voluntarily delivered to appellant, so the State necessarily was proceeding on the theory that consent was ineffective due to deception. The record does not reveal any deception by false impression of law or fact, preventing information, transferring or incumbering property under Sec. 31.-01(2)(A)–(D), supra. The only evidence presented was appellant's failure to perform, which, under Sec. 31.01(2)(E), supra, is not sufficient to prove deception. Therefore, since the down payment was voluntarily given to the appellant pursuant to a contractual agreement and there is insufficient evidence in the record to show the money was obtained by deception, the conviction cannot stand." *Phillips v. State,* 640 S.W.2d 293 (Tex.Cr.App. 1982).

■ Likewise, since the money in the instant case was voluntarily given to the appellant pursuant to a contractual agreement, there is insufficient evidence in the record to show the money was obtained by deception, the conviction cannot stand.

Viewing the evidence most favorably in light of the jury's verdict, we conclude the State failed to sustain its burden of proof. The judgment is reversed and an acquittal is ordered.[4]

---

4. From much in the record it appears to this writer that the criminal law process was being utilized to collect a debt arising out of a contract—a civil law subject matter.