TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-93-00675-CR






Jerome Wolf, Appellant



v.



The State of Texas, Appellee



AND






NO. 03-93-00678-CR






Gary Newsome, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 0932962, HONORABLE LARRY FULLER, JUDGE PRESIDING






 After finding appellants Wolf and Newsome guilty of engaging in organized
criminal activity, Tex. Penal Code Ann. § 71.02 (West 1994), the jury assessed Wolf's
punishment at confinement for ten years and a fine of ten thousand dollars, and Newsome's
punishment at confinement for five years. Appellants assert nine points of error, contending the
trial court erred by: (1) granting the State's motion to amend the indictments the day of trial; (2)
granting the State's motion to amend the indictments to change the manner and means of the
offense; (3) finding no fatal variance between the indictments and the proof; (4) finding the
evidence sufficient to show ownership of the property; (5) finding the evidence sufficient to
support the conviction; (6) admitting State's Exhibits 1 through 98 over timely objections by
appellants; (7) admitting State's Exhibits 99 through 113 over appellants' timely objections; (8)
denying Wolf's motion for mistrial after the prosecutor commented on his failure to testify; and
(9) finding the evidence sufficient to show the value of the property. We will overrule appellants'
points of error and affirm the judgments of the trial court.

 Appellants were convicted under the first count in the indictments providing in
pertinent part that appellants:



with intent to establish and maintain and participate in a combination and in the
profits of a combination consisting of [appellants], Pat Fry, . . . [and] David
Williams, did commit the following offenses pursuant to a continuing course of
conduct:


On or about the 8th day of March, 1990, in the County of Travis and State of
Texas, Pat Fry and David Williams and defendants Gary Newsome and Jerome
Wolf did then and there unlawfully appropriate property, by acquiring and
otherwise exercising control over property, namely, workers' compensation
insurance, of the value of over $20,000.00 and with the intent to deprive the owner
of the property and without the effective consent of the owner, the Texas Workers
Compensation Assigned Risk Pool, said consent being induced by deception,
namely, said defendants created and confirmed by words and conduct, a false
impression of fact, not believing it to be true, that was likely to affect and did
affect the judgment of said owner in the transaction.



 Appellants operated Metro Financial Group, Inc., d/b/a ATS, Inc. ("ATS") in
Oklahoma City. ATS was engaged in "employee leasing," a concept in which businesses
terminate their employees, who are then hired by a leasing company. The leasing company then
leases the services of the employees to their original employers for a service fee. The original
employer pays salaries, insurance, and benefits in addition to the service fee. The arrangement
results in savings for the original employer in workers' compensation insurance and other
insurance costs incidental to employee coverage.

 Anyone seeking workers' compensation insurance coverage in Texas who is unable
to secure it in the voluntary market may apply through the Texas Workers' Compensation
Assigned Risk Pool (the "Pool"). If the Pool decides to bind the risk, the Pool assigns the risk
to one of the servicing companies. Upon request from the insured, the servicing company issues
certificates of insurance. It is the servicing company's responsibility under its contract with the
Pool to issue the policy, to collect the premiums and to handle and pay claims. The amount of
premium is based on the payroll. The insured is obligated to send payroll reports to the servicing
company. Pursuant to its contract with the Pool, the servicing company sends auditors to review
the payroll records of the insured at the end of the policy period.

 The Pool must write workers' compensation insurance for companies that are
unable to secure it through the voluntary market. The Pool is ultimately responsible for paying
claims and absorbing losses. If the Pool suffers a net underwriting loss in a year, it assesses all
member companies based on a pro rata basis of their market share. Losses that are paid by a
servicing company are reimbursed by the Pool.

 At the outset, we will consider appellants' points of error challenging the
sufficiency of the evidence to support the convictions. In their fifth point of error, appellants
contend that there is an absence of evidence to show that appellants intended to unlawfully
appropriate the property at the time of taking thereof.

 When reviewing a challenge to the sufficiency of the evidence to support a
conviction, an appellate court must determine whether, viewing the evidence in the light most
favorable to the conviction, any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Butler
v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989). A reviewing court should not substitute
its determination of guilt for that of the fact finder unless it is found to be irrational or
unsupported by the evidence, such evidence being viewed under the standard set forth in Jackson. 
Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). "[I]t is enough that the
conclusion of guilt is warranted by the combined and cumulative force of all the incriminating
circumstances." Brandley v. State, 691 S.W.2d 699, 703 (Tex. Crim. App. 1985).

 ATS, an employee leasing company with headquarters in Oklahoma City and doing
business in Texas, submitted an application to the Pool on January 31, 1989, requesting workers'
compensation insurance. At that time, Newsome was president of ATS, and Wolf was chief
financial officer and CPA of ATS. The application to the Pool was signed by Patricia Fry as vice-president of ATS.

 Fry testified that a number of representations in the application were incorrect. 
Fry, a sales representative for ATS, stated that she did not know that she was ever a vice-president of ATS. The application listed the location of all "factories, shops, yards, buildings,
premises or other work places" of ATS as an address in Colleyville, Texas, an address Fry stated
was her personal residence. The statements in the application about the business buildings and
work places being located at the Colleyville address were false, ATS having its headquarters in
Oklahoma City. Fry testified that Newsome called her and asked that she sign the application,
stating "I was there and he wasn't. It was just a matter of convenience." Pursuant to the
applicant's expressed preference, the Pool assigned Houston General Insurance Company as
servicing carrier, effective February 1, 1989.

 David Williams, a sales person for ATS, testified he probably sold leasing
agreements in Texas in 1989, John Barbour Trucking being his first account. Williams sent
requests from the Oklahoma City office to Houston General for certificates of insurance for its
leasing clients. After Houston General refused to provide the certificates because the request did
not come from an executive officer, Newsome advised Houston General in a letter, dated August
28, 1989, that Williams was an executive vice-president of ATS. Williams denied ever being an
executive vice-president of ATS. Williams requested numerous certificates of insurance, which
Houston General issued. Williams explained that certificates of insurance show that employees
are covered and that the amount of payroll of ATS's client companies is a factor in determining
the premium.

 The Pool directed ATS to report its payroll on a monthly basis. Madge Wenzell,
medical claims adjuster for Houston General, identified letters she sent ATS in April, July, and
September 1989, asking for payroll information and threatening to cancel the policy if the
information was not received. Wenzell received a letter, dated July 1, 1989, from Wolf stating,
"[W]e are still attempting to book some business in the State of Texas -- however to date we have
no payrolls to be covered by the subject policy." Leasing agreements with Texas companies,
beginning in January 1989, were shown to have been executed by ATS prior to the date of Wolf's
letter. Houston General received payroll reports signed by Wolf for the months of July through
December 1989, which showed no employees and no payroll.

 Representatives of Barbour Trucking Company, Thrasher Trucking Company, Big
Mack Trucking Company, Patterson Drilling Company, Chem-Pac, Snyder Well Servicing,
Patterson Petroleum, Source Services, B.W. Fabricators and Questor Drilling testified that they
had contracted with ATS for employee leasing services, all agreements signed on behalf of ATS
by either Newsome or Wolf. Jerry Gill and Michelle Gill testified that they worked under the
supervision of Wolf at ATS in 1989. They stated that they received payroll reports from the
above named companies and entered the reports in the ATS computers.

 Kim Broom, senior payroll analyst for Houston General, testified that she became
concerned and called Kay Hamblin at the Pool to report that ATS had an "extremely active file
for certificate holders as well as alternate employer endorsements and the insurer had reported no
payroll for any employees for any reason." John Guy testified that he was in charge of insurance,
accounting and financial operations for Questor Drilling in 1989. Guy signed a lease agreement
on behalf of Questor with ATS, represented by Wolf, on December 10, 1989. Guy notified the
Pool to report that Questor's employees were covered by Houston General, effective December
16, 1989. Questor paid ATS to cover its payroll, insurance and other costs under the contract. 
Guy became concerned after learning that the company's December payroll had not been reported
by ATS. After Guy called Wolf about the failure of ATS to file a report, Wolf filed an amended
report for December that only listed the payroll of Questor Drilling. A letter accompanied the
report stating that he (Wolf) was unaware that a salesman had sold some business. The amount
of premium based on the payroll report was $33,069.

 Kelly Crowell, an employee of a firm doing insurance premium auditing, was
contacted by Houston General to audit ATS to determine whether they had correctly reported their
payroll throughout the policy period. After being contacted, Wolf told Crowell that he needed
two weeks, and Crowell agreed to this request. At the expiration of two weeks, Crowell
attempted to contact Wolf to no avail. Despite personally going to Wolf's office in Oklahoma
City on March 8, 1990, Crowell testified that he was never able to see or make further contact
with Wolf. Crowell stated that he abandoned his efforts to conduct the audit because of ATS's
failure to cooperate.

 Alton Head, manager of the premium audit department at Houston General,
testified that he was "finally" able to talk to Wolf on April 25, 1990, at which time Wolf stated
that he would agree to an audit after a hearing on a temporary restraining order on May 7. Wolf
advised Head that he would call him. Head related that Wolf never called him. Head advised the
Pool that Houston General was unable to audit ATS because of ATS's refusal to make records
available. Gina Hawkins, a Pool employee, testified that the Pool would not insure an applicant
if the Pool knew that the applicant was not going to submit payroll reports, fail to pay premiums
and refuse to submit to an audit.

 Appellants point to the indictments that allege that the offense occurred "on or
about March 8, 1990," and note that their application was filed on February 2, 1989. Appellants
contend that there is a total absence of evidence that appellants intended to unlawfully appropriate
property at the alleged date. Where an "on or about" date is alleged as the date of the commission
of the offense, a conviction may be had upon proof that the offense was committed any time prior
to the return of that indictment that is within the limitation period. Ex parte Hyett, 610 S.W.2d
787, 789 (Tex. Crim. App. 1981). The limitations period for engaging in organized crime is the
same as that of the most serious offense that is the object of the activity. Tex. Code Crim. Proc.
Ann. art. 12.03(b) (West Supp. 1995). The most serious offense in the present case is theft, and
the limitation period for theft is five years. Tex. Code Crim. Proc. ann. art. 12.01 (West Supp.
1985). The State thus clearly proved that the alleged offense occurred within the limitation
period.

 Appellants rely on cases holding that a failure to perform the promise in issue
without other evidence of intent or knowledge is not sufficient proof that the accused did not
intend to perform or knew that the promise would not be performed. See Peterson v. State, 645
S.W.2d 807, 811 (Tex. Crim. App. 1983); Phillips v. State, 640 S.W.2d 293, 294 (Tex. Crim.
App. 1982); Stockman v. State, 826 S.W.2d 627, 636 (Tex. App.--Dallas 1992, pet. ref'd); Cox
v. State, 658 S.W.2d 668, 670-71 (Tex. App.--Dallas 1983, pet. ref'd). A common thread in these
cases was the State's reliance on the accuseds' failure to fully complete construction pursuant to
the terms of the contracts. Peterson, Stockman, Phillips and Cox held that a showing that the
accused had not fully performed his obligation under the contractual agreement, standing alone,
was insufficient to show that payments were obtained by deception.

 In the instant cause, appellants' initial application to the Pool was fraught with
misrepresentations. The applications for certificates of insurance were made by a person who was
falsely represented to be an executive officer of the Pool. Payroll reports were listed as zero after
lease agreements had been made with companies who had reported payrolls and made premium
payments. Houston General found it impossible to obtain appellants' cooperation for an audit. 
Thus, the deception that began with the initial application to the Pool continued throughout the
entire series of transactions. Viewing the evidence in the light most favorable to the verdicts, we
hold that a rational trier of fact could have found that there was sufficient evidence of intent to
support the verdict. Appellants' fifth point of error is overruled.

 In their fourth point of error, appellants assert that the evidence is insufficient to
show that the Pool was the owner of the property appropriated. "Owner" is defined as a person
who "has title to the property, possession of the property, whether lawful or not, or a greater right
to possession of the property than the actor." Tex. Penal Code Ann. § 1.07(a)(35)(A) (West
1994). The trial court tracked this definition of "owner" in its charge to the jury. Appellants urge
that the Pool never services any policy, never writes any policy, and never pays any claims. 
While the Pool may obtain a copy of the policy for its files, appellants urge that it has no legal
title to the policy.

 At the outset, it should be noted that appellants were charged with the theft of
workers' compensation insurance rather than an insurance policy. It is undisputed that the only
way appellants could obtain workers' compensation insurance was by making application to the
Pool. The Pool underwrites the application, binds insurance coverage and assigns a servicing
company. The servicing company issues the policy, collects premiums, provides loss control
services, pays claims and performs audits. While it is ultimately reimbursed by member
companies, the Pool has the responsibility for paying claims and absorbing losses. At the very
least, the Pool stands in an agency or broker relationship with the servicing companies. The
duties performed by the Pool in accepting applications, binding coverage, assigning it to a
servicing company and paying losses provide probative evidence that the Pool exercises a degree
of management and control over the insurance. Viewing the evidence in the light most favorable
to the verdict, we hold that a rational trier of fact could have found that there was sufficient
evidence to support a finding that the Pool had a greater right of possession to the insurance than
persons who obtained it by deception. Appellants' fourth point of error is overruled.

 In their ninth point of error, appellants assert that the evidence is insufficient to
show the value of the property. The indictments charged that appellants "did then and there
unlawfully appropriate property, by acquiring and otherwise exercising control over property,
namely workers' compensation insurance, of the value of over $20,000 . . . ." Appellants urge
that the contract or policy was never introduced at trial and that there was never an audit
performance on the contract of insurance. 

 Appellants were charged with the theft of insurance. We are persuaded that
insurance is "intangible personal property" capable of being stolen. See Tex. Penal Code Ann.
§ 31.01(5)(B) (West 1994). The trial court held that Pool employee Gina Hawkins was an expert
witness in calculating premiums from payroll and worker classification. Hawkins used invoices
ATS had sent to companies with which it had leasing agreements to determine worker
classification and payroll in calculating the premiums. Hawkins testified that the total premiums
due for payrolls of the seven client companies was $215,452. Guy of Questor Drilling testified
that the premium due for his company in January 1990 would have been in excess of $30,000. 
ATS did not report any payroll or employees for the month of January 1990. We find no merit
in appellants' argument that the date the insurance was appropriated was not shown. Clearly, the
appropriation was within the limitation period. We hold that a rational trier of fact could have
found beyond a reasonable doubt that there was sufficient evidence to support the value element
of the offense. Appellants' ninth point of error is overruled.

 In their first point of error, appellants contend that the trial court erred in granting
the State's motion to amend the indictments where they alleged that consent was "inducted" by
deception by replacing the word "inducted" with the word "induced." The trial court granted the
State's motion to amend at a pretrial hearing on July 6, 1993. The physical act of deleting the
letter "t" to change the word "inducted" to the word "induced" did not occur until August 16,
1993 at a pretrial hearing on the first day of trial. The trial court overruled appellants' objection
to the trial court's permitting the physical act of amending the indictment on the first day of the
trial. The trial court offered appellants a continuance, which appellants declined. Article 28.10
of the Code of Criminal Procedure provides:



  (a) After notice to the defendant, a matter of form or substance in an indictment
or information may be amended at any time before the date the trial on the merits
commences. On the request of the defendant, the court shall allow the defendant
not less than 10 days, or a shorter period if requested by the defendant, to respond
to the amended indictment or information.


  (b) A matter of form or substance in an indictment or information may also be
amended after the trial on the merits commences if the defendant does not object.


  (c) An indictment or information may not be amended over the defendant's
objection as to form or substance if the amended indictment or information charges
the defendant with an additional or different offense or if the substantial rights of
the defendant are prejudiced.



Tex. Code Crim. Proc. Ann. art. 28.10 (West 1989).

 In Ward v. State, 829 S.W.2d 787 (Tex. Crim. App. 1992), cited by appellants,
the court held that notice of an amendment must come from the face of the indictment, not a trial
court order authorizing the amendment. Id. at 794. In Sodipo v. State, 815 S.W.2d 551 (Tex.
Crim. App. 1991), relied on by appellants, the State sought to amend the indictment on the first
day of trial by changing an enhancement paragraph cause number and the defendant's objection
and request for a ten-day continuance were overruled by the trial court. The court held that the
harmless error analysis under Texas Rules of Appellate Procedure 81(b)(2) should not be applied
to the ten day continuance rule. Id. at 556.

 Unlike Sodipo, the trial court in the instant cause offered appellants a ten-day
continuance to respond to the amended indictment. In Ward, unlike the instant cause, the State
did not physically amend the indictment despite the trial court's order authorizing the State to
amend the name of the complaining witness from "Steve Holler" to "Steve Scott." The Sodipo
court specifically noted that it was not deciding that all "mandatory" statutes are immune for the
harmless error analysis, stating:



We do find that provisions such as the ten day requirement found in Art. 28.10(a)
cannot be subjected to a harm analysis in any meaningful manner, because the
record will not reveal any concrete data from which an appellate court can
meaningfully gauge or quantify the effect of the error.



Id. at 554.

 Assuming that the trial court erred by overruling appellants' objection, the instant
cause contains data from which we can "meaningfully gauge or quantify the effect of the error." 
While the order allowing the amendment, granted well in advance of trial, did not serve as the
physical amendment, the trial court could have reasonably inferred that appellants were not
surprised or unprepared to respond to the amended indictments when they declined the trial
court's offer of a continuance. We hold beyond a reasonable doubt that any error the trial court
made in allowing the amendment made no contribution to the conviction or the punishment. 
Appellants' first point of error is overruled. 

 In their second point of error, appellants urge that the trial court's action in
granting the State's motion to amend the indictments prejudiced appellants' substantial rights. We
find our disposition of appellants' first point of error dispositive of this contention. Appellants'
second point of error is overruled.

 In their third point of error, appellants assert that there is a fatal variance between
the indictments and the proof at trial because there is no evidence that appellants "inducted"
consent by deception. The indictments in the instant cause were amended by deleting the letter
"t" in order to reflect the word "induced." Thus, the State was under no burden to prove that
consent was "inducted" by deception. Moreover, the Court of Criminal Appeals has recently
stated that not every variance between the evidence at trial and the indictment is fatal. Stevens
v. State, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995). The court cited earlier cases that had
held that the defendant had the burden to show that he was surprised or prejudiced. See Human
v. State, 749 S.W.2d 832 (Tex. Crim. App. 1988); Plessinger v. State, 536 S.W.2d 380 (Tex.
Crim. App. 1976). We find no merit in appellants' contention that the holding in Stevens is
prospective. Assuming there had been a variance in the instant cause, the appellants have not
shown surprise or prejudice. Appellants' third ground of error is overruled.

 In their sixth and seventh points of error, appellants urge that the trial court erred
in admitting State's Exhibits 1 through 98 and Exhibits 99 through 113 as business records of
Houston General Insurance Company. Appellants contend that the records were inadmissible
because: (1) the business records affidavits and the required notice are faulty; (2) the records
were prepared in anticipation of litigation; (3) appellants were not afforded the right of
confrontation under the United States Constitution and the Texas Constitution; and (4) the records
contain hearsay within hearsay and lack trustworthiness.

 The affidavits, signed by Norma Normad and Robert Gripp as custodians of the
business records of Houston General Insurance Company, track the affidavit form set out in Rule
902(10)(b) of the Rules of Criminal Evidence. Tex. R. Crim. Evid. 902(10)(b). The affidavits
omit the number of pages contained in the records. Both affiants testified at trial. Rule
902(10)(b) provides that "an affidavit that substantially complies with the provisions of this rule
shall suffice." Id. In Petrick v. State, 832 S.W.2d 767 (Tex. App.--Houston [1st Dist.] 1992, pet.
ref'd), the court rejected the defendant's claim that there had not been substantial compliance
where there was a discrepancy in the number of documents and pages listed. Id. at 772-73. The
affidavits refer to the "records attached hereto." We hold that the trial court in the instant cause
did not abuse its discretion in finding substantial compliance with Rule 902.

 Appellants urge that they were not given proper notice of the filing of the affidavits
and the business records because the notice did not identify the name and employer to which the
affidavits applied. Rule 902(10)(a) provides that the "notice shall identify the name and the
employer, if any, of the person making the affidavit." Tex. R. Crim. Evid. 902(10)(a). The
affiants in the instant cause were identified as "custodians of business records for Houston General
Insurance Company." We perceive no error where as in the instant cause the word "employer"
is omitted, when the clear import of the language used leaves no doubt about the identity of the
affiants' employer.

 Appellants claim the business records were prepared in anticipation of litigation. 
Appellants' contention is not supported by a condensed statement of facts showing how the
records in the instant cause were prepared in anticipation of litigation nor do appellants cite pages
in the record where the matter complained of is to be found, as required by Rule 74 of the Texas
Rules of Appellate Procedure. See Tex. R. App. P. 74(d), (f); Petrick, 832 S.W.2d at 773. 
Appellants generally allege that the records were prepared in anticipation of litigation without
discussing how the authorities they cite apply to the instant cause. Thus, they have not properly
presented this argument for review.

 Appellants' contention that they were denied the right to confrontation and cross-examination under the United States Constitution and Texas Constitution is generally alleged
without any reference to any place in the record where these objections were voiced in the trial
court. See Tex. R. App. P. 74(d). Applicable to this contention, as well as appellants' claim that
the records lack an indicia of reliability, is Rule 803(6) of the Rules of Criminal Evidence which
provides that records that comply with Rule 902(10) are admissible without regard to the
availability of the declarant "unless the source of information or the method or circumstances of
preparation indicate lack of trustworthiness." Tex. R. Crim. Evid. 803(b). Appellants have failed
to show how the business records in question lack trustworthiness. Appellants' sixth and seventh
points of error are overruled.

 In the eighth point of error, appellant Wolf asserts that the trial court erred in
overruling his motion for mistrial after the prosecutor commented on his failure to testify. As we
will show, appellant Newsome expressly disassociated himself from the motion. The following
occurred during the State's closing argument at the guilt/innocence phase of the trial:



MS. KEY [Prosecutor]: Moreover, ladies and gentlemen, Jerome Wolf continues
on his scam getting free workers' compensation insurance and he gets caught. And
he gets caught when John Guy finds out, as you remember his testimony, when
John Guy says hey, boys, I had insurance with Houston General and I found out
from Ms. Kay Hamblin that my premium has not been paid for the month of
December.


You have that letter from Mr. Guy in evidence before you. The letter he wrote to
the Pool saying hey, I'm covered by Houston General under this policy number. 
So he calls as he testified. He calls up to Oklahoma City and he says hey, where
is my premium report. I want my men covered. And Jerome Wolf says oh, I
forgot. He files an amended payroll report, ladies and gentlemen. . . . He says to
Questor Drilling okay, I'll file it. Because John Guy is breathing down their neck,
he files a December report saying oh, yeah we owed you $33,000 and he attaches
a letter saying oh, I'm sorry; when I filed the December 1989 report saying I had
no payroll therefore no premium, I didn't know we had any business. Houston
General received this in January of '90.


   Well ladies and gentlemen, guess who signed the Questor Drilling lease
agreement in December of 1989. Jerome Wolf. Jerome Wolf knew that he had
business. He's lying through his lawyer. It is not true.


   MR. SAWYER [Counsel for Newsome]: That is it. That is a comment on the
failure of the Defendant to testify. She knows it, it is back door; I object.


   THE COURT: I sustain the objection. The Court instructs you not to concern
yourself and disregard the last regard [sic].


   MR. ANDERSON [counsel for Wolf]: Judge, wait I am not done. On behalf
of Defendant Jerome Wolf I move for a mistrial because of her comment on the
failure of the Defendant to testify.


   MR. SAWYER: On behalf of Defendant Newsom we will not move for a
mistrial under any circumstances.


   THE COURT: Overruled, Mr. Anderson.



 The failure of a defendant to testify shall not be taken as a circumstance against
him, nor shall the same be alluded to or commented on by counsel in the cause. Tex. Code Crim.
Proc. Ann. art. 38.08 (West 1979). The standard to be used in determining whether a
prosecutorial comment violates Article 38.08 is set forth in Dickinson v. State, 685 S.W.2d 320
(Tex. Crim. App. 1984):



   It is now well settled in this State that for the argument or comment of the
prosecuting attorney to offend against Art. 38.08, supra, the language used must
be looked to from the standpoint of the jury, and the implication that the language
used had reference to the accused's failure to testify must be a necessary one. It
is not sufficient that the language used might be construed as an implied or indirect
allusion thereto. The test employed is whether the language used was manifestly
intended or was of such character that the jury would naturally and necessarily take
it to be a comment on the accused's failure to testify. Of course, in applying this
test, the facts and circumstances of each case must be analyzed to determine
whether the language used was of such character.



Id. at 323 (citations omitted).

 The argument that Wolf lied in his letter to Houston General by stating "I didn't
know we had any business" was a reasonable deduction from the evidence that showed that Wolf
had earlier signed a lease agreement with Questor Drilling. Under these circumstances, the
language was not of such character that the jury would naturally and necessarily take it to be a
comment on appellant's failure to testify. Moreover, prior to the complained of argument, the
prosecutor had argued, without objection, that appellant had lied when he wrote Houston General
a letter on July 1, 1989 that he would advise them when they signed up anyone "because on May
20, 1989, Jerome Wolf signed a leasing agreement with Thrasher Trucking." To be timely, an
objection must be raised at the earliest opportunity. See Johnson v. State, 803 S.W.2d 272, 291
(Tex. Crim. App. 1990), cert. denied, 111 S. Ct. 2914 (1991).

 While no objection was raised in the trial court that the prosecutor was striking at
appellant over his counsel's shoulders, an argument that accuses defense counsel of improper
argument cannot be condoned. See Gomez v. State, 704 S.W.2d 770, 772-73 (Tex. Crim. App.
1985). Since defense counsel did not voice this objection at trial, reversal will result on appeal
only if the comment was so prejudicial that an instruction to disregard could not have cured the
harm. Wilkerson v. State, 881 S.W.2d 321, 328 (Tex. Crim. App. 1994). Defense counsel had
earlier stated that the prosecution and the insurance industry were "allies" and that "the State
would rather lose count two than even remotely touch the truth of the matter." The protection
afforded defense counsel against charges of improper conduct "does not create a sanctuary to
which defense counsel may retreat with immunity and thereby deny the prosecutor the right to
reply to defense counsel's argument." Fegurgur v. State, 734 S.W.2d 103, 106 (Tex.
App.--Austin 1987, no pet.). Assuming that the prosecutor's argument can be construed as
striking over his counsel's shoulders, we hold that the trial court's instruction to disregard cured
any improper argument. Appellant Wolf's eighth point of error is overruled.

 The judgments are affirmed.



 

 Tom G. Davis, Justice

Before Chief Justice Carroll, Justices Aboussie and Davis*

Affirmed on Both Causes

Filed: May 17, 1995

Do Not Publish









* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).