COURT OF APPEALS

                                                 SECOND DISTRICT
OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO. 2-09-300-CR

 

 

JAMES DEAN GRAYSON                                                                   APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

              FROM
THE 396TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                     MEMORANDUM OPINION[1]

 

 

          Appellant James Dean Grayson appeals his conviction for
theft, contending in six points that the evidence is legally and factually
insufficient to show that he intended to deprive anyone of property, that he
unlawfully appropriated property, and that the complaining witness was the
owner of the property.  See Tex.
Penal Code Ann. ' 31.03(a) (Vernon Supp.
2009).  We affirm.

Background Facts

          In 2008, the First Baptist Church of Euless (FBCE) needed a
new digital mixing board and other equipment for its music department.  Under FBCE=s
policy, Alton LaGrappe, a church employee, collected three bids for the price
of the equipment.  The church eventually
chose a bid for $15,510.59 from All A-Round Video and Sound (AAVS).  AAVS submitted an invoice to the church.

          In February 2008, Gary Phillips, the church’s administrative
pastor who was responsible for its financial matters, authorized the church to
purchase the equipment from AAVS through an internal purchase order.  Phillips signed a check made out to AAVS from
the church’s Chase Bank account for the amount in AAVS=s
invoice, and LaGrappe delivered the check to AAVS.

          Appellant, who had previously been employed and fired by
the church, is the sole proprietor of AAVS.  The church=s
employees had been instructed to not do business with appellant.[2]
 AAVS’s $15,510.59 bid to the church for
the equipment that the church was looking for was based on a deal that appellant
had brokered with Nomad Productions, which is operated by Paul Glasgow.  Glasgow told appellant that appellant would
need to pay cash for the equipment.

          Appellant went to a Chase Bank branch and attempted to cash
the check that LaGrappe had given him; the bank refused to do so.  But then, appellant opened a checking account
for AAVS at that same bank and deposited the check. Once appellant made the
deposit, he immediately withdrew $3,510.59 and left the bank.[3]

          In the meantime, an employee of the bank called FBCE to
verify the legitimacy of the check and find out who had authorized it.  Through the bank=s
contacting the church, Phillips eventually became aware that appellant is the
sole proprietor of AAVS.  The church
asked the bank to stop payment on the check, but that request came too late
because the funds had already been deposited in AAVS’s account.  The bank also never placed a hold on AAVS’s
account.

          In the latter part of February 2008, seven days after his
first withdrawal from his sole proprietor account, appellant withdrew $11,900, which
was $100 less than the balance of the purchase price, from the account.  He still did not purchase the equipment for
the church.  On March 4, appellant sent
Phillips an e-mail that stated the following:

 

          Gary,

 

          Through the grapevine I have heard
that YOU intend on pressing charges against my company for fraud.  I assure you that this is not the case.  I had ordered parts and supplies to be
delivered to the [FBCE] campus from Nomad Productions which is the company you
told your staff to deal with after You had recognition that I was involved. . .
.[[4]]  There are issues that popped up after my
departure from FBCE. . . .  Please, as I
have told ALTON to tell you, AAVS will have the church’s funds back to the FBC
CAMPUS.  By March 18.

 

Phillips responded to
appellant=s
e-mail on March 10 and informed appellant that if the funds were not returned
to FBCE by March 18, Phillips would turn the matter over to legal counsel.  March 18 came and went but no equipment or
money arrived.

          On March 20, appellant e-mailed Phillips to inform him that
he could not refund the church=s
money because the money was not in his possession and that he could not deliver
the promised equipment because it was Ano
longer available at the price that was quoted.@  The next day, appellant e-mailed Phillips
again and promised to refund the church=s
money.

          Appellant e-mailed Phillips yet again on March 26.  He told Phillips that the original mixing
board he had quoted was Aliquidated to another buyer
before [he] could get the funds because of the fraud [allegations].@  Appellant went on to state that he had located
similar equipment (although at a higher price) and promised to credit FBCE on
its next purchase. 

          In the end, FBCE did not receive the equipment or a refund
of its money. Phillips contacted the police to allege that appellant had
committed theft, and he learned at that time that appellant had withdrawn all
of the church’s money from AAVS’s bank account.

          A grand jury indicted appellant for theft.[5]
 Appellant waived his right to a jury and
pled not guilty.  The trial court found
appellant guilty and pronounced a sentence of two years=
confinement, but the court suspended that sentence, placed appellant on
community supervision for five years, and ordered appellant to pay restitution
of $15,510.59.  Appellant filed notice of
this appeal.

Evidentiary Sufficiency

          Appellant claims that the evidence is legally and factually
insufficient to support his conviction.  In
a theft case, the State must prove that (1) a person (2) with intent to deprive
the owner (3) unlawfully appropriated (4) property. See Tex. Penal Code
Ann. '
31.03(a); Ex parte Luna, 784 S.W.2d 369, 371 (Tex. Crim. App. 1990) (op.
on reh’g); Bokor v. State, 114 S.W.3d 558, 560 (Tex. App.CFort
Worth 2002, no pet.).  Elements of theft
may be proved by direct or circumstantial evidence.  See Bryant v. State, 627 S.W.2d 180, 182
(Tex. Crim. App. [Panel Op.] 1982); Christensen v. State, 240 S.W.3d 25,
32 (Tex. App.CHouston
[1st Dist.] 2007, pet. ref=d)
(op on reh’g).

Standards of review

          In reviewing the legal sufficiency of the evidence to
support a conviction, we view all of the evidence in the light most favorable
to the prosecution in order to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007).  This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235
S.W.3d at 778.

          The trier of fact is the sole judge of the weight and
credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App.
2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214 S.W.3d 9, 16–17
(Tex. Crim. App. 2007).  We must presume
that the factfinder resolved any conflicting inferences in favor of the
prosecution and defer to that resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Clayton, 235 S.W.3d at 778.  The standard of review is the same for direct
and circumstantial evidence cases; circumstantial evidence is as probative as
direct evidence in establishing the guilt of an actor.  Clayton, 235 S.W.3d at 778; Hooper,
214 S.W.3d at 13.

When reviewing the factual sufficiency
of the evidence to support a conviction, we view all the evidence in a neutral
light, favoring neither party.  Steadman
v. State, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s
determination is manifestly unjust.  Steadman, 280 S.W.3d at 246; Watson,
204 S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, although legally sufficient, contradicts the
judgment.  Watson, 204 S.W.3d at
417.




 

Unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always factually sufficient when
it preponderates in favor of the conviction. 
Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d at
417.

Intent to deprive and
unlawful appropriation

          In his first four points, appellant contends that the
evidence is legally and factually insufficient to prove that he intended to
deprive anyone of property or that he unlawfully appropriated property.  Appellant briefed his contentions regarding intent
to deprive and unlawful appropriation together. 
Because, under the facts of this case, the intent to deprive and
unlawful appropriation elements both require the State to show that appellant
had no intent to perform AAVS’s agreement with the church at the time that he
took the church’s check, we will examine the elements together.[6]

          A defendant “deprives” someone of property by “withhold[ing]
property from the owner permanently or for so extended a period of time that a
major portion of the value or enjoyment of the property is lost to the owner.”  Tex. Penal Code Ann. ' 31.01(2)(A)
(Vernon Supp. 2009).  “Relevant intent to
deprive the owner of property is the accused’s intent at the time of the
taking.”  Peterson v. State, 645
S.W.2d 807, 811 (Tex. Crim. App. 1983) (op. on reh’g).  “It is well settled that intent to commit
theft can be inferred from the surrounding circumstances.”  Roper v. State, 917 S.W.2d 128,
132 (Tex. App.CFort
Worth 1996, pet. ref=d) (citing Coronado v. State, 508 S.W.2d 373, 374
(Tex. Crim. App. 1974)).  A person acts
intentionally “with respect to the nature of his conduct . . . when it is his
conscious objective or desire to engage in the conduct.”  Tex. Penal Code Ann. '
6.03(a) (Vernon 2003).  In determining
whether the evidence is sufficient to establish that appellant had criminal
intent to commit theft, we may consider whether he personally gained from what
was taken, whether he partially performed on any of the representations that
were made, and whether any inferences can properly be drawn from the combined
force of the circumstantial evidence.  Christensen, 240 S.W.3d at 32.

          Under the facts of this case, for appellant=s
appropriation of property to have been unlawful, he must have taken the
property without its owner’s effective consent. 
See Tex. Penal Code Ann. ' 31.03(b)(1);[7]
Schmitz v. State, 952 S.W.2d 922, 924 (Tex. App.CFort
Worth 1997, pet. ref=d).  Consent is not effective when it is Ainduced
by deception or coercion.@  Tex. Penal Code Ann. § 31.01(3)(A).  Thus, to show unlawful appropriation, the
State must prove that at the time that appellant got the church=s
check, he did so by deception or coercion. 
See Wilson v. State, 663 S.W.2d 834, 836B37
(Tex. Crim. App. 1984).  Deception means
the following:

          (A) creating or confirming by words or
conduct a false impression of law or fact that is likely to affect the judgment
of another in the transaction, and that the actor does not believe to be true; 

 

          (B) failing to correct a false
impression of law or fact that is likely to affect the judgment of another in
the transaction, that the actor previously created or confirmed by words or
conduct, and that the actor does not now believe to be true; [or]

 

          . . . .

 

          (E) promising performance that is
likely to affect the judgment of another in the transaction and that the actor
does not intend to perform or knows will not be performed, except that failure to perform the promise
in issue without other evidence of intent or knowledge is not sufficient proof
that the actor did not intend to perform or knew the promise would not be
performed. 

 

Tex.
Penal Code Ann. ' 31.01(1).
 Therefore, when an owner gives property
or money voluntarily and in pursuit of a contractual agreement and there is
insufficient evidence to show deception, the owner has given its effective
consent and there is therefore no unlawful appropriation.  See
Peterson, 645 S.W.2d at 812; Phillips v. State, 640 S.W.2d
293, 294 (Tex. Crim. App. [Panel Op.] 1982); Roper, 917 S.W.2d at
131B32; see
also Jacobs v. State, 230 S.W.3d 225, 229B30
(Tex. App.CHouston
[14th Dist.] 2006, no pet.) (explaining that the Amere
fact that one fails to return funds paid in advance after failing to perform a
contract does not constitute theft” and that A[i]n
sum, the State must show a rational factfinder could have found appellant had
no intention of fulfilling his obligation under the agreement@).

          Here, Phillips voluntarily authorized the check=s
delivery to AAVS under the parties=
agreement.  Thus, appellant=s
nonperformance of AAVS’s part of the bargain does not by itself show his
unlawful appropriation.  See Tex.
Penal Code Ann. '' 31.01(1)(E), (3)(A),
31.03(b)(1).  Instead, the State is
required to prove that appellant did not intend to purchase the equipment for
the church at the time that he received the check and therefore acquired
Phillips=s
consent by deception. Appellant’s intent to steal the money and unlawfully
appropriate it by deception may be inferred from the following facts:

·       
appellant
did not disclose to Phillips that he was the proprietor of AAVS when he
submitted the bid to the church through AAVS’s invoice even though the church
had previously fired him;

 

·       
appellant
tried to cash the church’s entire check upon receiving it;

 

·       
despite
withdrawing $3,510.59 from the account on the day that he deposited the check,
appellant did not buy any of the church’s equipment that day or use the
withdrawn money as a deposit for the equipment;

 

·       
despite
withdrawing almost the entire remaining amount of money that was given to him
by the church approximately one week later, appellant still did not buy the
equipment even though Glasgow still had it;

 

·       
after
depositing the check in AAVS’s account, appellant did not answer calls from one
of the church’s employees to the telephone number that appellant had listed on
his AAVS invoice;

 

·       
appellant
told Glasgow in an e-mail that the church had stopped payment on its check
although, in fact, the church did not stop payment and the bank never placed a
hold on AAVS’s account;

 

·       
appellant
promised to refund the church’s money on several occasions and was given time
by the church to do so, but he never returned the money; and

 

·       
appellant
deceived the church by telling Phillips that the “console that was in question
[was] no longer available” and that it had been “liquidated to another buyer
before [he] could get the funds” when, in fact, Glasgow still had the console
and never told appellant that the console had been sold.

 

       We recognize that some of the evidence in
the record weighs against the trial court’s decision to convict appellant.  For example, Glasgow testified that he and
appellant had multiple conversations in which they talked about the specific
equipment that the church needed, including a mixing console, preamps, and a
digital input/output card.  Glasgow also
said that after appellant received the church’s check, appellant called Glasgow
to tell him that appellant would meet him to pick up the equipment but that appellant
never actually did so.  While Glasgow’s
testimony about his communication with appellant before and after appellant
received the church’s check could imply that appellant intended to complete
AAVS’s transaction with the church at the time that he received the check, we
conclude that because of appellant’s misrepresentations regarding returning the
church’s money and regarding the equipment’s alleged unavailability, the trial
court could have reasonably inferred that the communication was a ruse to cover
up appellant’s theft.

       Also, appellant’s attempt to cash the
church’s check could imply that he was trying to complete AAVS’s agreement with
the church at that time since Glasgow required cash before transferring the
equipment.  However, the trial court
could have also reasonably inferred appellant’s intent to steal from his
attempt to cash the check.  Finally,
witnesses testified that appellant has a good, dependable business
reputation.  But some of those witnesses
conceded that they did not have any knowledge about the facts related to AAVS’s
agreement with the church.

       Appellant relies on Peterson and Roper to
contend that the evidence is insufficient to convict him.  In Peterson,
the court of criminal appeals held that the evidence was legally insufficient
to show that the defendant appropriated $58,000 by deception from a warehouse
owner under a construction contract because, in part, the defendant completed between
75% and 95% of the construction work, there was a dispute between the defendant
and the owner about terms of their agreement, and there were disputes between the
defendant and construction material suppliers about how much he owed them or
whether the suppliers had given him the correct materials for the job.  645 S.W.2d at 807–12.  Unlike the defendant in Peterson, appellant did not partially perform his agreement with
the church even though he had the funds to do so and the equipment was
available to be purchased.  Also, unlike the
construction agreement in Peterson,
the record in this case does not show a dispute about the terms of AAVS’s
agreement with the church that contributed to appellant’s failure to perform
the agreement.

          In Roper,
we held that the evidence was legally insufficient to prove theft because the
defendant had consent to sell a farmer’s hay and the defendant testified that
he believed he was entitled to keep the money he made while selling the hay
since the farmer owed him money for a commission and wages.  917 S.W.2d at 130–33.  Here, appellant did not have any basis to
believe that he was entitled to keep the church’s money without providing any
of the promised equipment.  Rather, he
deceived the church about whether he would return the money and whether he
could have purchased the equipment from Nomad Productions with the money that
the church had given him.  Appellant’s
deception provided the trial court with circumstantial evidence that he intended
to steal the church’s money rather than perform the agreement.  See Ellis v. State, 877 S.W.2d 380,
383 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d); Webb v. State, 752
S.W.2d 208, 210 (Tex. App.—Houston [1st Dist.] 1988, pet. ref’d); Henke v.
State, 730 S.W.2d 117, 118 (Tex. App.—Corpus Christi 1987, pet. ref’d).

       In our legal sufficiency review, we must
defer to the trial court’s resolution of conflicting inferences that may be
drawn from the evidence.  See Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.  We conclude that, in giving such deference in
this case, the trial court could have rationally found that appellant did not
intend to perform his agreement with the church at the time that he took its
check, and the court therefore could have justifiably found the intent to
deprive and unlawful appropriation elements beyond a reasonable doubt.  Thus, we overrule appellant’s first and
third points.

       Similarly, while we have recognized that some
inferences that could be drawn from the evidence conflict with the trial
court’s decision to convict appellant, we cannot conclude that the weight of those
inferences is so great to make the trial court’s judgment manifestly
unjust.  See Steadman, 280
S.W.3d at 246; Watson, 204 S.W.3d at 414B15,
417.  We may not hold that the evidence is factually
insufficient merely because we “harbor a subjective level of reasonable doubt
to overturn [the] conviction.”  Watson, 204 S.W.3d at 417.  Thus, we hold that the evidence is factually
sufficient to prove the elements of intent to deprive and unlawful
appropriation, and we overrule appellant’s second and fourth points.

Phillips’s ownership of the money

          In his fifth and six points, appellant contends that the
evidence is legally and factually insufficient to prove that Phillips was the
owner of the money that he took.  An
owner is someone who has a “greater right to possession of the property than
the actor.”  Tex. Penal Code Ann. '
1.07(a)(35)(A).

          Appellant’s argument that Phillips was not the owner of the
money seems to be dependent on a positive resolution of his first four points;
appellant succinctly contends in his brief that the “trial record establishes
only the existence of a civil contract dispute. 
Consequently, the evidence is legally and factually insufficient to
prove beyond a reasonable doubt that the complaining witness had a greater
right to possession” of the money.  We
have upheld the trial court’s implicit findings that appellant intended to
deprive Phillips of the money and unlawfully appropriated it; the evidence
shows more than a civil contract dispute.

          Furthermore, the evidence shows that Phillips has authority
to spend money on the church’s behalf.  Phillips
testified that he is responsible for overseeing all of the church’s fiduciary
matters and keeping records of business purchases.  Also, Phillips signed the purchase order
that authorized the delivery of the church’s check to appellant.  We hold that this evidence, coupled with
appellant’s unlawful appropriation of the money, shows that Phillips had a
greater right to possession of the $15,510.59 than appellant.  See
Jordan v. State, 707 S.W.2d 641, 644 (Tex. Crim. App. 1986) (holding that a
store manager who had “control and managerial authority over the store and its
money” qualified as an owner under the statutory definition).  In other words, the evidence is sufficient to
show that Phillips qualifies as the church’s “special owner.”  Liggens
v. State, 50 S.W.3d 657, 660 (Tex. App.—Fort Worth 2001, pet. ref’d) (holding
that a store manager had a greater right to possession than the defendant and
explaining that a “‘special owner’ is an individual, such as an employee, who
is in care, custody, or control of the property belonging to another person or
a corporation”); see also Jackson v.
State, 270 S.W.3d 649, 657 (Tex. App.—Fort Worth 2008, pet. ref’d) (holding
that a car dealership’s employee qualified as the owner of a car because he had
a greater right of possession than the defendant).

          For these reasons, viewing the evidence in the light most
favorable to the verdict, we hold that the trial court could have rationally found
beyond a reasonable doubt that Phillips was the owner of the money; thus, the
evidence is legally sufficient as to that element.  See Clayton, 235 S.W.3d at 778.  We have not found any evidence in the record
that weighs against Phillips’s ownership of the money.  Viewing the evidence in a neutral light, we
cannot conclude that it is so weak concerning Phillips’s ownership of the money
that the trial court’s verdict is clearly wrong or manifestly unjust.  Therefore, the evidence is also factually
sufficient as to that element.  See Steadman,
280 S.W.3d at 246.  We overrule
appellant’s fifth and sixth points.

Conclusion

          Having
overruled each of appellant’s six points, we affirm the trial court’s judgment.

 

                                                                   TERRIE
LIVINGSTON

                                                                   CHIEF
JUSTICE

 

PANEL:  LIVINGSTON,
C.J.; GARDNER and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: 
August 5, 2010











[1]See Tex. R. App. P. 47.4.





[2]Appellant’s
counsel said during his opening statement that appellant had worked for the
church’s music department but was fired because he allowed someone to repossess
property from the church after being instructed not to. The trial court
excluded evidence about appellant’s employment with the church.





[3]Appellant=s counsel theorized
during his opening argument at trial that the initial withdrawal represented
appellant=s commission for
brokering the deal between the church and Nomad Productions.  The invoice that was submitted by AAVS to the
church does not reference appellant=s commission.





[4]Glasgow testified
that no one from FBCE ever contacted him about the equipment.





[5]Theft of property
valued between $1,500 and $20,000 is a state jail felony that carries
punishment of up to two years= confinement.  Tex. Penal Code Ann. '' 12.35(a),
31.03(e)(4) (Vernon Supp. 2009). 





[6]Appellant
concedes in his brief that “evidence of deception would generally tend to show
an intent to deprive.”





[7]Appropriation
includes acquiring or exercising control over property.  Tex. Penal Code Ann. ' 31.01(4)(B).