Opinion issued July 6, 2007











 




In The

Court of Appeals

For The

First District of Texas






NO. 01-04-00713-CR






EDWARD CHRISTENSEN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause No. 971063






OPINION ON REHEARING


 On November 16, 2006, a panel of this Court reversed on appeal the conviction
of appellant, Edward Christensen, and remanded the cause to the trial court for further
proceedings. The State filed motions for rehearing and en banc reconsideration. At
the request of this Court, appellant timely filed a response to the State's motion. We
grant the State's motion for rehearing, withdraw our previous opinion, and substitute
this opinion in its stead. (1)

 Appellant appeals from a conviction for state jail felony theft of property
valued between $1,500 and $20,000. See Tex. Pen. Code Ann. § 31.03(e)(4)
(Vernon Supp. 2006). Appellant pleaded not guilty. (2) The jury found appellant guilty
of theft, and the trial court assessed punishment at confinement for two years in a
state jail facility, suspended for four years of community supervision, and a fine of
$1,000. We sustain appellant's first issue that asserts that the evidence is legally
insufficient to establish his guilt, and reverse and render judgment that he is not guilty
of the offense. (3) 


Background Appellant was a deputy with the Harris County Sheriff's Office. In March
1997, appellant became president of the Harris County Deputies' Organization (the
Organization), a union that is a not-for-profit organization composed of
approximately 3,000 deputies. The Organization was formed to provide services for
the benefit of its members, such as the improvement of employment benefits, the
improvement of working conditions, assistance to injured deputies, and assistance to
the families of deputies injured or killed in the line of duty. The Organization
maintained an office run by four officers--president, vice-president, secretary, and
treasurer--and eight board members. The Organization raised funds for its expenses
and activities from fees it received from its members through payroll deductions. 

 The Organization also raised funds through telemarketing. One of the
telemarketers used by the Organization was Ron Kowalsky. Kowalsky began
working for the Organization in January 1998 under a written agreement that was
negotiated by William Tabor, then the Organization's vice-president, and that was
ratified by the Organization's board of directors. The agreement provided that
Kowalsky would receive contingency fees that allowed him to keep 75% to 80% of
the money raised from the "sale of advertising." Although appellant did not
participate in the formation of the agreement, he was a primary contact for Kowalsky
when Kowalsky began telemarketing for the Organization. Kowalsky's telemarketing
that began as "the sale of advertising" later included the solicitation of funds for the
Organization over the telephone by mentioning the Organization's support for
different programs, such as drug awareness and Toys for Tots. The Organization
never had official permission, authorization, or recognition to solicit donations for
Toys for Tots, which is a program trademarked by the United States Marine Corps. 
It did, however, donate toys to the program.

 Consistent with his general practice for obtaining approval of a telemarketing
campaign for the Organization, Kowalsky "briefly" discussed Toys for Tots with
appellant, although Kowalsky could not recall the specifics of the conversation. 
Kowalsky then drafted the correspondence that mentioned Toys for Tots. Kowalsky
sent the draft to appellant for approval. Appellant signed the draft letter, which,
according to Kowalsky, permitted the telemarketing for Toys for Tots. Appellant
later signed another letter mentioning Toys for Tots. The two letters signed by
appellant regarding Toys for Tots were virtually identical, except that the names of
the officers and board members shown on the stationery were different, which
Kowalsky explained was consistent with his general practice to obtain new letters
when the members of the board changed.

 The Toys for Tots letter stated as follows:

 Dear Friend,


 On behalf of the Harris County Deputies' Organization, please let me
Personally thank you for your generous support.

 

 Every year at this time the Harris County Deputies' Organization lends
A helping hand of support to the " TOYS FOR TOTS " program.. This
Program provides toys for children of families who cannot afford to do
So, and to those children who have no family. Just knowing that there
Is a light at the end of the tunnel gives hope to these children year after
Year. Let us all as a community give what we can in order to bring
Some Joy and Laughter into the lives of those who are less fortunate
Than others.

 

 Once Again I would like to thank you for your generous support and
Cooperation. It is only through such assistance that we can carry on.

 

 Sincerely,

 [Signature]

 Ed Christensen, President

 Harris County Deputies' Organization


(Emphasis, punctuation, and capitalization in original). 

 Although Kowalsky initially conducted the telemarketing through his own
business, he soon hired subcontractors. One of the subcontractors was John Merritt,
who had a telemarketing business consisting of approximately 15 employees seated
at rows of tables with telephones. Merritt solicited funds for Toys for Tots on behalf
of the Organization in 1999 and 2000. Merritt worked independently, deciding on his
own the programs for which he would solicit. Kowalsky's sole involvement with
Merritt's telemarketing consisted of tendering, in September 1999, the Toys for Tots
letter that was signed by appellant, in addition to letters for other programs that were
approved by appellant. Merritt used the correspondence that he received from
Kowalsky to prepare a script for his employees to read during their telephone
solicitations. Merritt also gave copies of that correspondence to approximately 10%
of prospective contributors who requested written verification before making a
contribution. Merritt did not contact appellant or anyone at the Organization
regarding the Toys for Tots solicitation. 

 Merritt tendered the funds received from contributors to Kowalsky about once
a week, but no attempt was made to segregate the funds to determine which programs
the contributors intended to support. Kowalsky took the commingled funds that he
received from Merritt to the clerical staff at the Organization, who would deposit all
the funds into a bank account that belonged to the Organization. About two days
later, Kowalsky would receive a check from the Organization for 75% to 80% of the
funds that he had delivered to the Organization. Appellant and another officer
usually signed the check for Kowalsky's payment. Kowalsky kept 10% of the
payment, but tendered the rest to Merritt. 

 The clerks at the Organization who accepted the funds from Kowalsky reported
to the treasurer. The treasurer then reported the information to the board at regularly
scheduled meetings. Kowalsky went to a couple of board meetings to discuss
fundraising, but he did not recall discussing the Toys for Tots program with the
board.

 In mid-November 2000, after Terry Padilla had taken over as treasurer for the
Organization, she noticed that some of the checks received from Kowalsky had Toys
for Tots written on the memo line of the checks. Padilla was unaware of the
telemarketing for Toys for Tots and asked Kowalsky about the checks. After speaking
with Kowalsky, Padilla reported Kowalsky's activities to appellant, who, according
to Padilla, was surprised to learn about the Toys for Tots solicitations. In Padilla's
presence, appellant made a telephone call to Kowalsky, instructing him to stop
soliciting funds for Toys for Tots. Padilla and appellant also discussed their desire
to donate toys for Toys for Tots at that year's annual Christmas party hosted by the
Mexican American Sheriff's Organization (MASO), another union composed of
deputies employed by the sheriff's office.

 Also in mid-November, a search warrant was executed at Merritt's business
after an investigator at the Harris County Attorney's Office learned that Merritt's
employees were falsely identifying themselves as peace officers when they made
telephone calls requesting donations for the Organization. During the execution of
the search warrant at Merritt's business, officers recovered the original
correspondence signed by appellant that mentioned the Toys for Tots program.

 After the search warrant was executed at Merritt's business, the Organization's
board discussed the Toys for Tots telemarketing campaign at its next regularly
scheduled meeting. Louis Guthrie, the vice-president, asked appellant whether funds
were being raised for Toys for Tots. Appellant responded that he "was going to look
into it." At the next meeting of the Organization, appellant said that he had
"investigated Toys for Tots and anybody could raise money for Toys for Tots."
Appellant, a former Marine, explained that he had "contacted a Hispanic sergeant at
the Marine Corps base who stated it was okay."

 In December 2000, MASO held its annual Christmas party, where appellant
arranged the donation of $1,700 worth of bicycles to Toys for Tots. The bicycles
were accepted by uniformed Marines representing Toys for Tots at the party. 
Kowalsky also donated approximately $500 worth of toys. Several members of the
Organization recounted that the Organization also made at least one other
contribution to Toys for Tots before 2000.

 Although the Organization made donations to Toys for Tots, the amount of
funds expended for Toys for Tots was substantially less than the amount of funds
received from the telemarketing solicitations. David Pilant, a fraud examiner
employed by the Harris County District Attorney's office, explained that bank records
for the Organization show that between September and December 2000, the
Organization received $20,515 for the Toys for Tots program through 222 checks that
had a notation that the donation was for "Toys for Tots." (4) After paying Kowalsky
75% to 80% of these funds, the Organization kept approximately $4,000 from these
checks written in late 2000. After the search warrant was executed and after appellant
instructed Kowalsky to stop the telemarketing for Toys for Tots, the Organization
accepted at least four checks from people who made donations intended for Toys for
Tots.

 At trial, appellant denied any intent to commit theft. Appellant said that
Kowalsky was supposed to be raising funds for the Organization generally and the
correspondence was "simply to explain to people what we do." Appellant
acknowledged that, as a former Marine, he was very familiar with Toys for Tots. 
Appellant, the Organization, and Merritt were sued by the Harris County Attorney's
Office, resulting in a $125,000 settlement, part of which was forwarded to the Toys
for Tots program. 

Legal Sufficiency of the Evidence

 Appellant contends that the evidence is legally insufficient to establish his
criminal intent to commit theft because he did not approve or write any of the scripts
used by the solicitors during the telemarketing; he did not have any contact with
Merritt; he did not have control over funds for the Organization or over the amount
of donations made to Toys for Tots; he never personally received any funds from the
Toys for Tots program; donations were made to Toys for Tots from the funds
received by the telemarketing; his signature was on a thank-you letter, not a
solicitation letter; and his directions to Kowalsky were to collect donations for the
Organization generally and not for any specific program. The State responds that
appellant's criminal intent is established by evidence that shows that the
correspondence mentioning Toys for Tots was signed by appellant; donations made
by the Organization to Toys for Tots were inadequate in relation to donations made
to the Organization that were intended for Toys for Tots; appellant was deceptive;
and appellant personally benefitted from the funds received from contributions to
Toys for Tots. 

A. Applicable Law for Determination of Legal Sufficiency of the Evidence

 In a legal sufficiency review, we view all of the evidence in the light most
favorable to the verdict and then determine whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jurors are the exclusive judges of
the facts, the credibility of the witnesses, and the weight to give their testimony. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). A jury is entitled
to accept one version of the facts and reject another, or reject any part of a witness's
testimony. Id. 

 In determining whether circumstantial evidence is legally sufficient to establish
guilt, we must consider the "logical force of the combined pieces of circumstantial
evidence in the case, coupled with reasonable inferences from them." Evans v. State,
202 S.W.3d 158, 166 (Tex. Crim. App. 2006) (holding that evidence was legally
sufficient to show that appellant exercised actual care, custody, control, or
management of cocaine on coffee table by examining combined pieces of
circumstantial evidence). A court must not conclude that the evidence is legally
insufficient by merely analyzing each fact in isolation, and must not rely on
alternative inferences from or explanations for the isolated pieces of evidence. Id. at
164. Instead, appellate courts are to view the evidence "in combination and in sum
total." Id. at 166.B. Applicable Law Concerning Theft Under Law of Parties

 The Texas Penal Code states that "[a] person is criminally responsible as a party
to an offense if the offense is committed by his own conduct, by the conduct of
another for which he is criminally responsible, or by both." Tex. Pen. Code Ann.
§ 7.01(a) (Vernon 2003). Criminal responsibility is defined in several ways, one of
which is that the defendant, "acting with intent to promote or assist the commission
of the offense . . . solicits, encourages, directs, aids, or attempts to aid the other person
to commit the offense." Id. § 7.02(a)(2) (Vernon 2003).

 When a party is not the "primary actor," the State must prove conduct
constituting an offense plus an act by the defendant done with the intent to promote
or assist such conduct. Beier v. State, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985); Miller
v. State, 83 S.W.3d 308, 313 (Tex. App.--Austin 2002, pet. ref'd). "Circumstantial
evidence alone may be used to prove that a person is a party to an offense." Powell
v. State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006). The evidence must show that
the parties were acting together to accomplish their common purpose. See Wygal v.
State, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977); Miller, 83 S.W.3d at 314. The
agreement to accomplish a common purpose, if any, must be made before or
contemporaneous with the criminal event, but in determining whether one has
participated in an offense, the court may examine the events occurring before, during,
and after the commission of the offense. Wygal, 555 S.W.2d at 469; Miller, 83 S.W.3d
at 314; see also Powell, 194 S.W.3d at 507.

 It is undisputed that appellant never had any contact with any complainant. His
guilt, if any, is only as a party to theft. For the State to establish appellant's guilt as
party to theft, the jury charge instructed the jury, in accordance with the Texas Penal
Code, that (1) Padilla, Kowalsky, or Merritt, between August to December 2000,
acting with the intent to deprive the complainants of their money, appropriated
complainants' money valued between $1500 and less than $20,000, by deception by
(a) giving them a false impression of law or fact that affected their judgment and that
appellant, Padilla, Kowalsky, or Merritt did not believe to be true, or (b) promising
performance that affected the judgment of complainants in the transaction, which
appellant, Padilla, Kowalsky, or Merritt did not intend to perform or knew would not
be performed, see Tex. Pen. Code Ann. §§ 31.03(a), (e)(4) (Vernon Supp. 2006),
31.09 (Vernon 2003); and (2) appellant acted with intent to promote or assist the
commission of theft by soliciting, encouraging, directing, aiding or attempting to aid
them to commit the offense. See id. §§ 7.01(a), 7.02(a)(2). 

C. Applicable Law and Analysis Concerning Criminal Intent to Commit Theft

 Because no direct evidence establishes appellant's guilt, we must determine
whether the circumstantial evidence shows that he had criminal intent to commit theft. 
A person acts with intent when it is his conscious objective or desire to engage in the
conduct or cause the result. Id. § 6.03(a) (Vernon 2003). Intent is most often proven
through the circumstantial evidence surrounding the crime, rather than through direct
evidence. Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). A jury
may infer intent from any facts that tend to prove its existence, such as the acts, words,
and conduct of the defendant. Id. Criminal intent is necessary to establish theft. See
Ellis v. State, 877 S.W.2d 380, 383 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). 
 In determining whether the evidence is legally sufficient to establish whether
appellant had criminal intent to commit theft, we examine the evidence in the record
in a light most favorable to the jury's verdict, which includes evidence pertaining to
whether he personally gained from what was allegedly taken, whether he partially
performed on any of the representations that were made to the complainants, whether
he used deception to obtain property, and whether any inferences can properly be
drawn from the combined force of the circumstantial evidence. 

 1. Personal Gain 

 In determining whether the defendant had criminal intent to commit theft, we
may consider whether the defendant experienced personal gain from the property
obtained from the complainants. See King v. State, 17 S.W.3d 7, 17 (Tex.
App.--Houston [14th Dist.] 2000, pet. ref'd) (noting that evidence that King had
criminal intent is shown in part by his use of complainant's money for sole purpose
of paying personal expenses and purchasing items for personal benefit). Viewed in
a light most favorable to the jury's verdict, the evidence shows that appellant used a
credit card that belonged to the Organization to cover his expenses while performing
work for the Organization and received a stipend of $1,500 for his services as
president of the Organization. The evidence also shows that funds solicited under the
telemarketing campaign were used to finance a party for the Organization, a benefit
for appellant as well as the other members of the Organization. The evidence is
undisputed, however, that the board controlled the finances of the Organization. 
Appellant attended the party, but the decision to host the party was made by the
Organization's board, not appellant. The board paid appellant the stipend for his work
as president of the Organization and allowed him to use the credit card to cover
expenses for that work. But it is undisputed that appellant never received any funds
that were not authorized by the board. 

 The State also points out that the evidence, viewed in the light most favorable
to the jury's verdict, shows that the solicitations for Toys for Tots by the telemarketers
occurred during the period of time when appellant was the president of the
Organization, appellant "called the shots" for the Organization, and appellant
controlled some of the finances for the Organization by writing checks for the
Organization. This evidence is no evidence of criminal intent to commit theft by
deception, however, because no evidence shows that appellant received any funds that
had not been authorized by the board. In one of its appellate briefs, the State concedes
that it "has not claimed . . . that the appellant became rich or gained anything extra as
a result of the solicited donations to the [Organization] on behalf of the Toys for Tots
program." We conclude no evidence shows that appellant personally benefitted from
the telemarketing that mentioned the Organization's support for Toys for Tots. 

 2. Partial Performance

 The evidence may be legally insufficient to show criminal intent when the
evidence shows partial performance of the matter for which funds were tendered. See
Peterson v. State, 645 S.W.2d 807, 811-12 (Tex. Crim. App. 1983) (holding evidence
legally insufficient to show criminal intent to commit theft when evidence showed that
Peterson failed to complete construction of project that was 95% complete); Martinez
v. State, 754 S.W.2d 799, 800 (Tex. App.--San Antonio 1988, pet. ref'd) (holding
evidence legally insufficient to show theft when evidence showed payment of almost
half of amount owed before dispute arose as to amount still unpaid); Cox v. State, 658
S.W.2d 668, 670 (Tex. App.--Dallas 1983, pet. ref'd) (holding evidence legally
insufficient because evidence showed Cox performed "a great deal of the services"
that he promised to perform and thus no evidence showed any representation or
promise that was false "at the time complainant surrendered any of the money to
him"). It is undisputed that the Organization gave $1,700 in toys to Toys for Tots in
December 2000, and thus it financially gave "support" to Toys for Tots, consistent
with the representation in the letter that was signed by appellant. The Organization
thus undisputedly performed, at least partially, what was represented in the letter
signed by appellant, by giving "support" to Toys for Tots. See Peterson, 645 S.W.2d
at 811-12; Martinez, 754 S.W.2d at 800; Cox, 658 S.W.2d at 670. 

 The dissenting opinion suggests that the jury could have determined that the
December 2000 donation was part of appellant's plan to try to cover up the crime
because the donation was made only after the search warrant was run at Merritt's
business. Although the dissenting opinion questions appellant's motives, the evidence
undisputedly shows that the Organization donated toys to Toys for Tots, supported
Toys for Tots, and thus partially performed what the telemarketers represented would
be performed. See Peterson, 645 S.W.2d at 811-12; Martinez, 754 S.W.2d at 800;
Cox, 658 S.W.2d at 670. 

 Even if appellant did not partially perform on the representation that the
Organization would support Toys for Tots, that lack of performance alone would be
insufficient to establish a criminal offense. See Phillips v. State, 640 S.W.2d 293, 294
(Tex. Crim. App. 1982) (holding evidence legally insufficient to show criminal intent
to commit theft when contractor received down payment and failed to perform
anything under agreement because no evidence showed deception by contractor). 
Thus, the mere fact that the Organization did not perform what it represented to the
complainants would alone be legally insufficient to establish criminal intent to commit
theft. See id. 

 3. Deception by Appellant

 a. No Evidence of Deception at Time of Solicitation

 The critical distinction between conduct that is criminal versus civil in nature
is whether the record shows deception and not merely a failure to perform. Webb v.
State, 752 S.W.2d 208, 210 (Tex. App.--Houston [1st Dist.] 1988, pet. ref'd) (stating,
"Here, unlike in Phillips . . . the critical distinction is that the record shows deception,
and not a mere failure to perform"); see Phillips, 640 S.W.2d at 294. Proof of intent
to commit theft is determined at the time the alleged criminal act is committed. See
Wilson v. State, 663 S.W.2d 834, 836-37 (Tex. Crim. App. 1984) ("Relevant intent
to deprive the owner of the property is the accused's intent at the time of the taking");
Kinder v. State, 477 S.W.2d 584, 586 (Tex. Crim. App. 1971) (holding evidence
legally insufficient to prove theft because no proof showed promises were false ab
initio, when evidence showed some money was paid as partial performance of
agreement); Reed v. State, 717 S.W.2d 643, 645 (Tex. App.--Amarillo 1986, no pet.)
("To prove its allegation of appellant's intent to deprive [complainant] of the money,
the State was obligated to establish that intent at the time appellant exchanged the
check into cash.").

 Under the Penal Code, "deception" is defined as "creating or confirming by
words or conduct a false impression of law or fact that is likely to affect the judgment
of another in the transaction, and that the actor does not believe to be true." See Tex.
Pen. Code Ann. § 31.01(1)(A) (Vernon Supp. 2006). As a party to the offense, the
evidence must show that appellant intended for the telemarketers to use deception to
obtain the contributions. However, here, no evidence shows that appellant intended
for telemarketers to use deception to obtain funds from contributors. Viewing the
evidence in a light most favorable to the jury's verdict, the evidence shows that
appellant testified that he was a former Marine and was familiar with Toys for Tots,
appellant signed the letter that began the Toys for Tots telemarketing, and appellant
knew that the telemarketers would be telling contributors that the organization
supports Toys for Tots. However, no implied or express promises were made to the
complainants concerning the amount of support the Organization would give to Toys
for Tots. Rather, the representations in the letter and the type of telemarketing that
appellant authorized were simply that the Organization would support Toys for Tots,
which it did.

 The dissenting opinion strongly relies on evidence that, as a former Marine,
appellant knew he could not solicit funds in this manner for Toys for Tots. The use
of the trademark owned by the Marine Corps was not authorized, and appellant and
the Organization have a civil judgment against them for that conduct. (5) The issue here,
however, is whether appellant intended to deceive complainants into making a
donation. No evidence shows an intent by appellant to deceive the complainants. The
letter signed by appellant informed contributors that the checks they were writing were
for the Organization. The letter then told contributors that the Organization supports
Toys for Tots, which it undisputedly did. No evidence shows any intent by appellant
to commit theft by deception of the contributors. See Wilson, 663 S.W.2d at 836;
Kinder, 477 S.W.2d at 586; Reed, 717 S.W.2d at 645. (6) 

 b. Deception After Event is Alone Not Enough to Show Intent

 The State points to appellant's "deception" after the search warrant was run on
Merritt's business to show deception by appellant. Deception after an alleged crime
is a circumstance that may permit an inference of guilt. See Valdez v. State, 623
S.W.2d 317, 321 (Tex. Crim. App. 1979) (noting that event after alleged crime, such
as flight from scene, is circumstance from which guilt may be inferred); Sosa v. State,
177 S.W.3d 227, 230 (Tex. App.--Houston [1st Dist.] 2005, no pet.) (following
Valdez). However, evidence that only shows deception after the fact is legally
insufficient to establish criminal intent at the time of the telemarketing. See Scott v.
State, 946 S.W.2d 166, 168 (Tex. App.--Austin 1997, pet. ref'd) (holding that,
standing alone, proof that defendant assisted primary actor in making getaway after
crime committed is insufficient to support defendant's conviction as party to crime);
Guillory v. State, 877 S.W.2d 71, 74 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd)
(holding that if evidence shows mere presence of defendant at scene of crime, or even
his flight from scene, without more, then it is insufficient to sustain conviction as 
party to offense). 

 Viewed in a light most favorable to the jury's verdict, the evidence shows that
after the criminal investigation began with the execution of the search warrant on
Merritt's business, appellant was not forthcoming with the Organization about his
knowledge of the Toys for Tots telemarketing. Appellant told the board, at first, only
that he would look into the matter. Later, appellant said that he had "investigated Toys
for Tots and anybody could raise money for Toys for Tots" and that he had "contacted
a Hispanic sergeant at the Marine Corps base who stated it was okay." The State
suggests that appellant had to know these statements were untrue due to appellant's
familiarity with Toys for Tots. Even if these statements were deceptive, the statements
occurred after the commencement of the criminal investigation, and, alone, are
insufficient to show criminal intent to commit theft at the time the contributions were
made. See Scott, 946 S.W.2d at 168; Guillory, 877 S.W.2d at 74.

 4. The Combined Evidence

 The State contends that the logical force of the combined pieces of
circumstantial evidence in the case, coupled with reasonable inferences from them,
provides legally sufficient evidence to support appellant's conviction. See Evans, 202
S.W.3d at 166. Viewed in a light most favorable to the jury's verdict, the combined
evidence shows that appellant knew that he had signed correspondence that expressly
tells contributors that the Organization lends a "helping hand of support" to Toys for
Tots and requesting that people "give what we can"; that he discussed the Toys for
Tots telemarketing with Kowalsky; that by signing the letter that mentioned the
program, he approved of the Toys for Tots telemarketing just as he approved other
telemarketing campaigns; that he failed to arrange for or tender funds received by the
telemarketers to Toys for Tots in amounts commensurate with what was contributed;
and that he did not disclose his knowledge of the telemarketing for Toys for Tots when
directly asked about it after the telemarketing had ceased. 

 Appellant was charged with his role in the telemarketing that asked the
complainants to contribute to the Organization under the representation that the
Organization supports Toys for Tots. Appellant did not have permission to use the
Toys for Tots name, and was sued civilly for that conduct, which resulted in a large
civil judgment against him and the Organization. But improper use of the Toys for
Tots name does not make what is improper conduct subject to liability in civil court
into a criminal offense of theft. The complainants were plainly told in the letter signed
by appellant that money was for the Organization and that their contribution was for
the Organization to "carry on." The letter told contributors only that the Organization
gave "support" to Toys for Tots, which is shown by the evidence to have undisputedly
occurred. No evidence shows deception of these complainants who wrote checks to
the Organization, which supports Toys for Tots.

 The dissenting opinion suggests that the jury could simply have convicted if it
believed Kowalksy's testimony. However, reliance on Kowalsky's testimony would
result in the acquittal of appellant, because Kowalsky plainly testified that appellant
had no criminal intent to commit theft or any criminal act. The dissenting opinion also
finds distasteful the arrangement that allowed the telemarketers to keep over 75% of
the total funds collected in checks that included a notation stating "Toys for Tots" and
the Organization. That financial division, however, was undisputedly arranged by
others in the Organization, not appellant. Additionally, the division of assets here is
consistent with the customary division of assets between telemarketers and their
clients. 

 The only evidence in the record that suggest deception by appellant is the
deception that occurred after the criminal investigation began when appellant related
that anyone could raise money for Toys for Tots and that a sergeant said it was okay,
but that later deception to the board for the Organization is no evidence that at the time
the contributions were made, appellant intended to have anyone deceive the
complainants. The bottom line is that there is no evidence in the record that appellant
either used or encouraged Kowalsky or anyone else to make misrepresentations to the
complainants to obtain their money. We conclude that, viewing the evidence in a light
most favorable to the jury's verdict and considering the combined evidence and the
reasonable inferences from that evidence, a rational trier of fact could not have found
that appellant acted with intent to promote or assist the commission of theft by
soliciting, encouraging, directing, aiding or attempting to aid others to commit the
offense. See Tex. Pen. Code Ann. §§ 7.01(a), 7.02(a)(2); King, 29 S.W.3d at 562. 
We hold that the evidence is legally insufficient to establish appellant's guilt as a party
to theft because no evidence shows that he had the criminal intent to commit theft. Conclusion

 We reverse the judgment of the trial court and render judgment that appellant
is not guilty of the offense. 



 Elsa Alcala

 Justice


Panel consists of Justices Taft, Jennings, and Alcala.


Justice Jennings, concurring.


Justice Taft, dissenting.


Publish. Tex. R. App. P. 47.2(b).

 

1. Having granted rehearing, we overrule the State's motion for en banc reconsideration
as moot. See Giesberg v. State, 945 S.W.2d 120, 131 n.3 (Tex. App.--Houston [1st
Dist.] 1996), aff'd, 984 S.W.2d 245 (Tex. Crim. App. 1998).
2. Appellant pleaded not guilty to the indictment for the felony offense of engaging in
organized criminal activity. See Tex. Pen. Code Ann. § 71.02 (Vernon Supp. 2006). 
When the State rested its case-in-chief, appellant moved for and was granted a
directed verdict on the offense of engaging in organized criminal activity. The trial,
however, proceeded on the lesser offense of state jail felony theft. 
3. Because we conclude that the evidence is legally insufficient to sustain appellant's
conviction, we need not address appellant's remaining issues that challenge the
factual sufficiency of the evidence and the trial court's ruling that overruled his
motion to quash the indictment.
4. At trial, 18 people testified that they would not have sent checks to the telemarketer
if they had known that Toys for Tots would not receive the majority of the funds. The
record shows, as follows:



 On August 1, 2000, Timothy Stovall wrote a check for $100;
 On October 2, 2000, Michael Likos wrote a check for $200;
 On October 2, 2000, Paul Fisher wrote a check for $150; 
 On October 4, 2000, Albert Coveney wrote a check for $100;
 On October 4, 2000, Sandra Wilson wrote a check for $150;
 On October 10, 2000, Malcolm Phillips wrote a check for $500;
 On October 10, 2000, Dr. Gary Flores wrote a check for $250;
 On October 17, 2000, Jimmy Nichols wrote a check for $125;
 On October 18, 2000, Karen Perez wrote a check for $400;
 On October 19, 2000, Norma Young wrote a check for $100;
 On October 25, 2000, Sam Johnson wrote a check for $150;
 On November 8, 2000, Bryant Dussetschleger wrote a check for $250;
 On November 22, 2000, Annika Tycer wrote a check for $100;
 On November 28, 2000, Marienne Beeckman wrote a check for $100;
 On November 29, 2000, John Cartwright wrote a check for $50;
 On December 17, 2000, Richard Stamper wrote a check for $75;
 On November 29, 2000, Santos Guajardo wrote a check for $100; and
 On December 4, 2000, Thomas Clark wrote a check for $100.
5. Using a trademark improperly is a deceptive trade practice for which a person may be
civilly sued. Under Section 17.46(b)(5) of the DTPA, a deceptive trade practice is, 


 representing that goods or services have sponsorship, approval,
characteristics, ingredients, uses, benefits, or quantities which
they do not have or that a person has a sponsorship, approval,
status, affiliation, or connection which he does not.


 Tex. Bus. & Com. Code Ann. § 17.46(b)(5) (Vernon Supp. 2006).
6. The telemarketers developed a script that went much further than what was mentioned
in the letter signed by appellant. No evidence shows that appellant had any
knowledge of or role in the development or use of the scripts. Similarly, Merritt had
telemarketers falsely represent themselves as peace officers, and other improper
activity occurred at Merritt's office. The evidence undisputedly shows that appellant
had no contact with Merritt and no evidence connects appellant with any of Merritt's
activities.