

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-09-300-CR**

JAMES DEAN GRAYSON                                       APPELLANT

V.

THE STATE OF TEXAS                                          STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

Appellant James Dean Grayson appeals his conviction for theft, contending in six points that the evidence is legally and factually insufficient to show that he intended to deprive anyone of property, that he unlawfully appropriated property,

---

[1]*See* Tex. R. App. P. 47.4.

and that the complaining witness was the owner of the property.   *See* Tex. Penal

Code Ann. § 31.03(a) (Vernon Supp. 2009).   We affirm.

## Background Facts

In 2008, the First Baptist Church of Euless (FBCE) needed a new digital

mixing board and other equipment for its music department.   Under FBCE's

policy, Alton LaGrappe, a church employee, collected three bids for the price of the

equipment.   The church eventually chose a bid for $15,510.59 from All A-Round

Video and Sound (AAVS).   AAVS submitted an invoice to the church.

In February 2008, Gary Phillips, the church's administrative pastor who was

responsible for its financial matters, authorized the church to purchase the

equipment from AAVS through an internal purchase order.   Phillips signed a

check made out to AAVS from the church's Chase Bank account for the amount in

AAVS's invoice, and LaGrappe delivered the check to AAVS.

Appellant, who had previously been employed and fired by the church, is the

sole proprietor of AAVS.   The church's employees had been instructed to not do

business with appellant.[2]   AAVS's $15,510.59 bid to the church for the equipment

that the church was looking for was based on a deal that appellant had brokered

---

[2]Appellant's counsel said during his opening statement that appellant had worked for the church's music department but was fired because he allowed someone to repossess property from the church after being instructed not to. The trial court excluded evidence about appellant's employment with the church.

2

with Nomad Productions, which is operated by Paul Glasgow. Glasgow told appellant that appellant would need to pay cash for the equipment.

Appellant went to a Chase Bank branch and attempted to cash the check that LaGrappe had given him; the bank refused to do so. But then, appellant opened a checking account for AAVS at that same bank and deposited the check. Once appellant made the deposit, he immediately withdrew $3,510.59 and left the bank.[3]

In the meantime, an employee of the bank called FBCE to verify the legitimacy of the check and find out who had authorized it. Through the bank's contacting the church, Phillips eventually became aware that appellant is the sole proprietor of AAVS. The church asked the bank to stop payment on the check, but that request came too late because the funds had already been deposited in AAVS's account. The bank also never placed a hold on AAVS's account.

In the latter part of February 2008, seven days after his first withdrawal from his sole proprietor account, appellant withdrew $11,900, which was $100 less than the balance of the purchase price, from the account. He still did not purchase the

--------

[3]Appellant's counsel theorized during his opening argument at trial that the initial withdrawal represented appellant's commission for brokering the deal between the church and Nomad Productions. The invoice that was submitted by AAVS to the church does not reference appellant's commission.

3

equipment for the church.   On March 4, appellant sent Phillips an e-mail that stated the following:

>       Gary,
>
>       Through the grapevine I have heard that YOU intend on pressing charges against my company for fraud.  I assure you that this is not the case.   I had ordered parts and supplies to be delivered to the [FBCE] campus from Nomad Productions which is the company you told your staff to deal with after You had recognition that I was involved. . . .[4]   There are issues that popped up after my departure from FBCE. . . .   Please, as I have told ALTON to tell you, AAVS will have the church's funds back to the FBC CAMPUS.   By March 18.

Phillips responded to appellant's e-mail on March 10 and informed appellant that if the funds were not returned to FBCE by March 18, Phillips would turn the matter over to legal counsel.  March 18 came and went but no equipment or money arrived.

On March 20, appellant e-mailed Phillips to inform him that he could not refund the church's money because the money was not in his possession and that he could not deliver the promised equipment because it was "no longer available at the price that was quoted."   The next day, appellant e-mailed Phillips again and promised to refund the church's money.

---

[4]Glasgow testified that no one from FBCE ever contacted him about the equipment.

4

Appellant e-mailed Phillips yet again on March 26. He told Phillips that the original mixing board he had quoted was "liquidated to another buyer before [he] could get the funds because of the fraud [allegations]." Appellant went on to state that he had located similar equipment (although at a higher price) and promised to credit FBCE on its next purchase.

In the end, FBCE did not receive the equipment or a refund of its money. Phillips contacted the police to allege that appellant had committed theft, and he learned at that time that appellant had withdrawn all of the church's money from AAVS's bank account.

A grand jury indicted appellant for theft.[5] Appellant waived his right to a jury and pled not guilty. The trial court found appellant guilty and pronounced a sentence of two years' confinement, but the court suspended that sentence, placed appellant on community supervision for five years, and ordered appellant to pay restitution of $15,510.59. Appellant filed notice of this appeal.

## Evidentiary Sufficiency

Appellant claims that the evidence is legally and factually insufficient to support his conviction. In a theft case, the State must prove that (1) a person (2) with intent to deprive the owner (3) unlawfully appropriated (4) property. *See* Tex.

---

[5]Theft of property valued between $1,500 and $20,000 is a state jail felony that carries punishment of up to two years' confinement. Tex. Penal Code Ann. §§ 12.35(a), 31.03(e)(4) (Vernon Supp. 2009).

5

Penal Code Ann. § 31.03(a); *Ex parte Luna*, 784 S.W.2d 369, 371 (Tex. Crim. App. 1990) (op. on reh'g); *Bokor v. State*, 114 S.W.3d 558, 560 (Tex. App.—Fort Worth 2002, no pet.). Elements of theft may be proved by direct or circumstantial evidence. *See Bryant v. State*, 627 S.W.2d 180, 182 (Tex. Crim. App. [Panel Op.] 1982); *Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (op on reh'g).

**Standards of review**

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the

6

weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at

7

246; *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the judgment. *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

**Intent to deprive and unlawful appropriation**

In his first four points, appellant contends that the evidence is legally and factually insufficient to prove that he intended to deprive anyone of property or that he unlawfully appropriated property. Appellant briefed his contentions regarding intent to deprive and unlawful appropriation together. Because, under the facts of this case, the intent to deprive and unlawful appropriation elements both require the State to show that appellant had no intent to perform AAVS's agreement with the church at the time that he took the church's check, we will examine the elements together.[6]

A defendant "deprives" someone of property by "withhold[ing] property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." Tex. Penal Code Ann.

_____

[6]Appellant concedes in his brief that "evidence of deception would generally tend to show an intent to deprive."

9

§ 31.01(2)(A) (Vernon Supp. 2009). "Relevant intent to deprive the owner of property is the accused's intent at the time of the taking." *Peterson v. State*, 645 S.W.2d 807, 811 (Tex. Crim. App. 1983) (op. on reh'g). "It is well settled that intent to commit theft can be inferred from the surrounding circumstances." *Roper v. State*, 917 S.W.2d 128, 132 (Tex. App.—Fort Worth 1996, pet. ref'd) (citing *Coronado v. State*, 508 S.W.2d 373, 374 (Tex. Crim. App. 1974)). A person acts intentionally "with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct." Tex. Penal Code Ann. § 6.03(a) (Vernon 2003). In determining whether the evidence is sufficient to establish that appellant had criminal intent to commit theft, we may consider whether he personally gained from what was taken, whether he partially performed on any of the representations that were made, and whether any inferences can properly be drawn from the combined force of the circumstantial evidence. *Christensen*, 240 S.W.3d at 32.

Under the facts of this case, for appellant's appropriation of property to have been unlawful, he must have taken the property without its owner's effective consent. *See* Tex. Penal Code Ann. § 31.03(b)(1);[7] *Schmitz v. State*, 952 S.W.2d 922, 924 (Tex. App.—Fort Worth 1997, pet. ref'd). Consent is not

---

[7]Appropriation includes acquiring or exercising control over property. Tex. Penal Code Ann. § 31.01(4)(B).

10

effective when it is "induced by deception or coercion." Tex. Penal Code Ann. § 31.01(3)(A). Thus, to show unlawful appropriation, the State must prove that at the time that appellant got the church's check, he did so by deception or coercion. *See Wilson v. State*, 663 S.W.2d 834, 836–37 (Tex. Crim. App. 1984). Deception means the following:

> (A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

> (B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true; [or]

> . . . .

> (E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

Tex. Penal Code Ann. § 31.01(1). Therefore, when an owner gives property or money voluntarily and in pursuit of a contractual agreement and there is insufficient evidence to show deception, the owner has given its effective consent and there is therefore no unlawful appropriation. *See Peterson*, 645 S.W.2d at 812; *Phillips v. State*, 640 S.W.2d 293, 294 (Tex. Crim. App. [Panel Op.] 1982); *Roper*, 917 S.W.2d at 131–32; *see also Jacobs v. State*, 230 S.W.3d 225, 229–30

11

(Tex. App.—Houston [14th Dist.] 2006, no pet.) (explaining that the "mere fact that one fails to return funds paid in advance after failing to perform a contract does not constitute theft" and that "[i]n sum, the State must show a rational factfinder could have found appellant had no intention of fulfilling his obligation under the agreement").

Here, Phillips voluntarily authorized the check's delivery to AAVS under the parties' agreement. Thus, appellant's nonperformance of AAVS's part of the bargain does not by itself show his unlawful appropriation. *See* Tex. Penal Code Ann. §§ 31.01(1)(E), (3)(A), 31.03(b)(1). Instead, the State is required to prove that appellant did not intend to purchase the equipment for the church at the time that he received the check and therefore acquired Phillips's consent by deception. Appellant's intent to steal the money and unlawfully appropriate it by deception may be inferred from the following facts:

- appellant did not disclose to Phillips that he was the proprietor of AAVS when he submitted the bid to the church through AAVS's invoice even though the church had previously fired him;

- appellant tried to cash the church's entire check upon receiving it;

- despite withdrawing $3,510.59 from the account on the day that he deposited the check, appellant did not buy any of the church's equipment that day or use the withdrawn money as a deposit for the equipment;

- despite withdrawing almost the entire remaining amount of money that was given to him by the church approximately one week later, appellant still did not buy the equipment even though Glasgow still had it;

12

- after depositing the check in AAVS's account, appellant did not answer calls from one of the church's employees to the telephone number that appellant had listed on his AAVS invoice;

- appellant told Glasgow in an e-mail that the church had stopped payment on its check although, in fact, the church did not stop payment and the bank never placed a hold on AAVS's account;

- appellant promised to refund the church's money on several occasions and was given time by the church to do so, but he never returned the money; and

- appellant deceived the church by telling Phillips that the "console that was in question [was] no longer available" and that it had been "liquidated to another buyer before [he] could get the funds" when, in fact, Glasgow still had the console and never told appellant that the console had been sold.

We recognize that some of the evidence in the record weighs against the trial court's decision to convict appellant. For example, Glasgow testified that he and appellant had multiple conversations in which they talked about the specific equipment that the church needed, including a mixing console, preamps, and a digital input/output card. Glasgow also said that after appellant received the church's check, appellant called Glasgow to tell him that appellant would meet him to pick up the equipment but that appellant never actually did so. While Glasgow's testimony about his communication with appellant before and after appellant received the church's check could imply that appellant intended to complete AAVS's transaction with the church at the time that he received the check, we conclude that because of appellant's misrepresentations regarding returning the church's money and regarding the equipment's alleged unavailability,

13

the trial court could have reasonably inferred that the communication was a ruse to cover up appellant's theft.

Also, appellant's attempt to cash the church's check could imply that he was trying to complete AAVS's agreement with the church at that time since Glasgow required cash before transferring the equipment. However, the trial court could have also reasonably inferred appellant's intent to steal from his attempt to cash the check. Finally, witnesses testified that appellant has a good, dependable business reputation. But some of those witnesses conceded that they did not have any knowledge about the facts related to AAVS's agreement with the church.

Appellant relies on *Peterson* and *Roper* to contend that the evidence is insufficient to convict him. In *Peterson*, the court of criminal appeals held that the evidence was legally insufficient to show that the defendant appropriated $58,000 by deception from a warehouse owner under a construction contract because, in part, the defendant completed between 75% and 95% of the construction work, there was a dispute between the defendant and the owner about terms of their agreement, and there were disputes between the defendant and construction material suppliers about how much he owed them or whether the suppliers had given him the correct materials for the job. 645 S.W.2d at 807–12. Unlike the defendant in *Peterson*, appellant did not partially perform his agreement with the church even though he had the funds to do so and the equipment was available to

14

be purchased. Also, unlike the construction agreement in *Peterson*, the record in this case does not show a dispute about the terms of AAVS's agreement with the church that contributed to appellant's failure to perform the agreement.

In *Roper*, we held that the evidence was legally insufficient to prove theft because the defendant had consent to sell a farmer's hay and the defendant testified that he believed he was entitled to keep the money he made while selling the hay since the farmer owed him money for a commission and wages. 917 S.W.2d at 130–33. Here, appellant did not have any basis to believe that he was entitled to keep the church's money without providing any of the promised equipment. Rather, he deceived the church about whether he would return the money and whether he could have purchased the equipment from Nomad Productions with the money that the church had given him. Appellant's deception provided the trial court with circumstantial evidence that he intended to steal the church's money rather than perform the agreement. *See Ellis v. State*, 877 S.W.2d 380, 383 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *Webb v. State*, 752 S.W.2d 208, 210 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd); *Henke v. State*, 730 S.W.2d 117, 118 (Tex. App.—Corpus Christi 1987, pet. ref'd).

In our legal sufficiency review, we must defer to the trial court's resolution of conflicting inferences that may be drawn from the evidence. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. We conclude that, in

15

giving such deference in this case, the trial court could have rationally found that appellant did not intend to perform his agreement with the church at the time that he took its check, and the court therefore could have justifiably found the intent to deprive and unlawful appropriation elements beyond a reasonable doubt. Thus, we overrule appellant's first and third points.

Similarly, while we have recognized that some inferences that could be drawn from the evidence conflict with the trial court's decision to convict appellant, we cannot conclude that the weight of those inferences is so great to make the trial court's judgment manifestly unjust. *See Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417. We may not hold that the evidence is factually insufficient merely because we "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Watson*, 204 S.W.3d at 417. Thus, we hold that the evidence is factually sufficient to prove the elements of intent to deprive and unlawful appropriation, and we overrule appellant's second and fourth points.

**Phillips's ownership of the money**

In his fifth and six points, appellant contends that the evidence is legally and factually insufficient to prove that Phillips was the owner of the money that he took. An owner is someone who has a "greater right to possession of the property than the actor." Tex. Penal Code Ann. § 1.07(a)(35)(A).

16

Appellant's argument that Phillips was not the owner of the money seems to be dependent on a positive resolution of his first four points; appellant succinctly contends in his brief that the "trial record establishes only the existence of a civil contract dispute. Consequently, the evidence is legally and factually insufficient to prove beyond a reasonable doubt that the complaining witness had a greater right to possession" of the money. We have upheld the trial court's implicit findings that appellant intended to deprive Phillips of the money and unlawfully appropriated it; the evidence shows more than a civil contract dispute.

Furthermore, the evidence shows that Phillips has authority to spend money on the church's behalf. Phillips testified that he is responsible for overseeing all of the church's fiduciary matters and keeping records of business purchases. Also, Phillips signed the purchase order that authorized the delivery of the church's check to appellant. We hold that this evidence, coupled with appellant's unlawful appropriation of the money, shows that Phillips had a greater right to possession of the $15,510.59 than appellant. *See Jordan v. State*, 707 S.W.2d 641, 644 (Tex. Crim. App. 1986) (holding that a store manager who had "control and managerial authority over the store and its money" qualified as an owner under the statutory definition). In other words, the evidence is sufficient to show that Phillips qualifies as the church's "special owner." *Liggens v. State*, 50 S.W.3d 657, 660 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding that a store

17

manager had a greater right to possession than the defendant and explaining that a "'special owner' is an individual, such as an employee, who is in care, custody, or control of the property belonging to another person or a corporation"); *see also Jackson v. State*, 270 S.W.3d 649, 657 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding that a car dealership's employee qualified as the owner of a car because he had a greater right of possession than the defendant).

For these reasons, viewing the evidence in the light most favorable to the verdict, we hold that the trial court could have rationally found beyond a reasonable doubt that Phillips was the owner of the money; thus, the evidence is legally sufficient as to that element. *See Clayton*, 235 S.W.3d at 778. We have not found any evidence in the record that weighs against Phillips's ownership of the money. Viewing the evidence in a neutral light, we cannot conclude that it is so weak concerning Phillips's ownership of the money that the trial court's verdict is clearly wrong or manifestly unjust. Therefore, the evidence is also factually sufficient as to that element. *See Steadman*, 280 S.W.3d at 246. We overrule appellant's fifth and sixth points.

## Conclusion

Having overruled each of appellant's six points, we affirm the trial court's judgment.

TERRIE LIVINGSTON

18

CHIEF JUSTICE

PANEL:   LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:   August 5, 2010